IN THE MATTER of the appropriation of the money arising from the sale of the real estate of JOHN GOSWILER.

Whenever by a rule of court, or an act of the legislature, a given number of days are allowed to do an act, or it is said an act may be done within a given number of days, the day in which the rule is taken, or the decision made is excluded, and if one or more Sundays occur within the time, they are counted, unless the last day falls on Sunday, in which case the act may be done on the next day. So where a decree, under the act of the 16th of April, 1827, relative to the distribution of money arising from sheriff and coroner's sales, was made on the 12th of April, and an appeal was entered on the 3d of May, the 2d being Sunday, the appeal is in time.

A, on the 30th of November, 1820, obtained judgment against P. *drawer*, and G. *indorser*, on which *fi. fa.* issued to *August term*, 1821, on the 29th of July, 1822, P. obtained a rule to show cause why judgment should not be opened as to him, and proceedings stayed in the mean time; on the 17th of February, 1827, this rule was discharged; to *April term*, 1827, *fi. fa.* issued, and was levied on a house and lot of P.; on the 17th November, 1828, P. gave evidence to the Court of Common Pleas, that he had satisfied the judgment to A, under an arrangement, by which the judgment against G. should stand revived for his use, and that the judgment was for the proper debt of G., and P. was surety only, and the court vacated the levy on P's lot, and directed the original judgment to stand revived for the use of P. Before this, several judgments had been obtained for others against G. On the 9th of January, 1830, the real estate of G. was sold and the proceeds brought into court for appropriation.

Held: That P. was not entitled to be substituted as surety, to the injury of other judgment creditors, after he had for eight years appeared on the records of the county as the real debtor, and that the order of the court marking the judgment of A, for his use, was not binding on other creditors who were not parties to it.

This was an appeal from a decree of the Court of Common Pleas of *Cumberland* county, in the appropriation of the money arising from the sale of the real estate of *John Goswiler*.

The decree was made on the 12th of April, and the appeal entered on Monday the 3d of May following. A motion was now made to quash the appeal, on the ground that it was not in time. This motion was argued with the question involved in the decree, from which the appeal was taken, by

*Williamson* for the appellant, who cited 1 *Sellon*, 207. 8 *Mod.* 21. 1 *Tid.* 431, 433. 1 *Arch. Pra.* 117. *Tid.* 626. 1 *Sellon*, 95. *Sims* v. *Hampton*, 1 *Serg. & Rawle*, 411. *Betz's Appeal*, 1 *Penn. Rep.* 271. *Commonwealth* v. *Barker*, 2 *Id.* 232. *Bond* v. *Gardner*, 4 *Bin.* 269. *Cook* v. *Grant*, 16 *Serg. & Rawle*, 211. *Munroe* v. *Wallace*, 2 *Penn. Rep.* 173. *Davis* v. *Barr*, 9 *Serg. & Rawle*, 141. And by

*Carothers*, *contra*.

The opinion of the court, which contains a detail of the material facts of the case, was delivered by

(Goswiler's Estate.)

Huston, J.—A preliminary point in this case, was this: The decree of the court was made on the 12th of April, the second day of May following, was Sunday, and the appeal was entered on Monday the third of May. The act of assembly, of the 16th of April, 1827, *Purdon*, 476, says, if any person shall consider himself aggrieved, by such decision, he may appeal to the Supreme Court, "within twenty days after such decision." Without recurring to all the decisions on the subject of computation of time, it may be sufficient to say, that whenever, by a rule of court, or an act of the legislature, a given number of days are allowed to do an act, or it is said an act may be done within a given number of days, the day in which the rule is taken, or the decision made is excluded, *Sims* v. *Hampton*, 1 *Serg. & Rawle*, 411, and if one or more Sundays occur within the time, they are counted, unless the last day falls on Sunday, in which case the act may be done on the next day. This construction has been so universally settled in courts, and in cases so similar to the one in question, that we think the rule ought to extend to cases under this act; and the general rule, we think, ought not to be questioned, especially as it is doubted whether we could substitute a better one in its place.

The *Pennsylvania Agricultural and Manufacturing Bank*, on the 30th November 1820, obtained a judgment against *C Poorman*, drawer, and *John Goswiler*, endorser for six hundred and thirty dollars, twenty-five cents. By an act of assembly of this state, it had been provided, that the drawer and endorser or endorsers of a note, might be joined in the same suit. This action had some peculiarities which distinguished it from other suits for debts against several debtors, for there might be judgments for one and against another. On this judgment a *fi. fa.* issued to *Aug.* Term 1821, which is stated to have been levied on personal property, &c. (of *Goswiler* it is said,) but we have not the writ or return.

On the 29th of July, 1821, *C. Poorman*, obtained a rule to show cause why this judgment should not be opened as to him, *Poorman*, and the proceedings were stayed in the meantime as to *Poorman*. On what allegation this rule was obtained, we know not. On the 17th February, 1827, this rule was discharged, and then the property levied on, was, it is stated, sold and applied to former levies. To *April* Term 1827 an *alias fi. fa.* issued, and was levied on a house and lot, &c. in *Mechanicsburg*, as the property of *Poorman*. It may be remarked here, that a great many judgments had been obtained before this one, against *Goswiler*. We have next the following entry from the docket: "17th November, 1828; Upon motion on behalf of *C. Poorman*, and it appearing that he had satisfied this judgment to the Bank, under an agreement, by which the judgment against *Goswiler*, should stand

26

revived for his use; and it also appearing to the court that the debt for which the said judgment was obtained, was the proper debt of the said *Goswiler*, and that said *Poorman* was only surety for the same, the Court vacate the levy made on the estate of the said *Poorman* on this execution, and direct the original judgment against *Goswiler* to stand revived for the use of the said *Poorman. See paper filed.*" This paper we have not, but we are told it is an agreement between *Poorman* and *Goswiler*.

On the 10th December 1828, Mr. *Penrose*, for *Atwood*, a judgment creditor, obtained a rule to show cause why this assignment to *Poorman*, should not be set aside. A rule was entered to take depositions. On the 15th of May, 1829, this rule was discharged.

A *scire facias* issued to *January Term*, 1829, to revive this judgment. *Jacob Garret* had brought suit to *August Term*, 1820, against *John Goswiler*, debt on note under seal, and a reference and report in this suit, was made on the 21st day of February, 1821, for the plaintiff for two hundred forty-one dollars and thirty-six cents. The defendants appealed, and in January 1825, withdrew his appeal, when this report became an absolete judgment.

Some real property of *Goswiler* had been sold on the 9th of January, 1830, and the question was, whether *Poorman* as owner of the Bank's judgment decreed to be assigned to him, or this latter judgment was entitled to the money. It was contended that the lien of this first judgment was gone under the authority of *Betz's Appeal*, 1 *Penn. Rep.* 271 and *Commonwealth* v. *Barker*, 2 *Penn. Rep.* 232, and a part of the court were of that opinion, but others doubted, on the idea that the rule in 1822 stayed all proceedings, and that no *scire facias* could then issue: and as the Chief Justice did not set in the case, we have considered it in another point of view. The right of a surety to be substituted for the plaintiff, and to hold the judgment against the principal, where the surety has paid the debt, has been often settled in this and other courts. There must, however, be some limitation to it. In this case, it is denied that *Poorman* was surety, and that he is entitled to be substituted if he were.

From inspection of the suit on the docket, it would appear that *Poorman* was the debtor—he was the drawer, and *Goswiler* the endorser. It is much stronger than the case of a man being the first named in a bond, it is *prima facie* evidence that he was the debtor and not the surety. To entitle him to substitution merely to facilitate his recovery against *Goswiler*, I agree that *Goswiler's* admission in the paper filed is good evidence, but not as against other creditors. The rule taken by *Atwood* and that rule being discharged will be conclusive to *Atwood*, but not as to other

creditors, who had no notice of that rule. *Stahl* v. *Jarret,* 2 *Rawle,* 454; 2 *Des. Rep.* 104. The party claiming to be substituted must always prove that he was a mere surety. *Kenedy* v. *Gibbs,* 2 *Des. Rep.* 380. But it does not appear whether this point was made in the Common Pleas; we rather think not, or dispositions would have been taken or an issue directed.

Can a surety put himself on the record expressly as principal, and after several years, and many judgment creditors have acquired rights, apply, and have his situation and character changed, so as to affect them? *Poorman* ties up this judgment five years by a rule, he then saw the docket and that he was represented to the world as the real debtor, and not the surety. If *Goswiler* had paid the debt, or it had been levied from *Goswiler's* property, he could have been substituted for the plaintiff, and by this judgment have covered *Poorman's* property, or have taken the proceeds of it from *Poorman's* creditors; and when *Poorman* pays it, he claims it from *Goswiler's* creditors. This right of substitution is an equity, but an equity must be managed fairly, it must not be this or that as suits the parties. When he drew the note, he represented himself as the debtor, and *Goswiler* as his surety. On this idea, the Bank discounted the note, and he could not, as against the Bank, deny this, and claim that notice of non-payment should be given to him. *Bank of Montgomery* v. *Walker,* 9 *Serg. & Rawle* 129. Why then after being sued, and appearing in the character of principal, on the record from 1820 till 1828, shall he be permitted to deny all this to the injury of others. In *Monroe* v. *Wallace,* 2 *Penn. Rep.* 173, we have a case where a man who really paid off a judgment against another had no right to be substituted for the judgment creditor, because his conduct exhibited a design to deceive, and defraud others. Although it was strenuously insisted and perhaps was true, that he intended no wrong, but was to hold the land till he was paid; and he reconveyed under the mistaken notion, that having paid the debt to *Monroe* he would be substituted in his place, and succeed to his rights.

*Erb's Appeal,* 2 *Penn. Rep.* 296, establishes a principle which may be applied here, viz: that it is not always enough to entitle a party to be substituted, or to the right of substitution, that such person has paid off a prior judgment, but it must also appear, that such person applying for such rights of substitution, has a greater equity than those who oppose it. And in 4th John. 546, *Chancellor Kent,* whose decisions and expressions in some cases would seem to have carried this right further than any who had gone before him, (except decisions under the civil law) says: "The benefit of substitution is only to be applied in a clear case, appearing from the proceedings in the cause."

We think the case before us does not present a clear case, and if

it could be made clear by testimony, that would not still entitle *Poorman* to be substituted as surety, to the injury of other judgment creditors, after he had for eight years appeared on the records of the county, as the real debtor.

The decree of the court of Common Pleas is reversed, and this court decree, that the judgment in favor of *Garret* is entitled to be paid out of the proceeds of the sale of the real estate of *John Goswiler,* in court for appropriation.

Decree reversed.