CARTER, Judge.
This is an appeal from a trial court judgment of eviction.
BACKGROUND
On or about April 30, 1973, petitioner, Caillouet Land Corporation (Caillouet), entered into a lease with Joseph E. Blanchard for a 7.5-acre tract of land on Pass Four-chon of Bayou Lafourche in Lafourche Par *1145 ish. Paragraph 17 of the lease provided, in pertinent part, as follows:
Lessor shall have no right to cancel the lease or take any action under its terms for the breach of this lease, whether for nonpayment of rent or otherwise, without first furnishing the Lessee with notice by certified mail giving the Lessee 10 days after receipt of such notice in which to comply.
Thereafter, Blanchard assigned the lease to Fourchon Docks, Inc., a corporation in which Blanchard owned a substantial interest.[1]
On September 26, 1977, Caillouet entered into another lease agreement with Blanchard for an 8-acre tract of land on Pass Fourchon, which tract was adjacent to the tract covered by the 1973 lease. Paragraph 16 of the lease provided, in pertinent part, as follows:
Lessor shall have no right to cancel the lease or take any action under its terms for the breach of this lease, whether for nonpayment of rent or otherwise, without first furnishing the Lessee with notice by certified mail giving the Lessee 10 days after receipt of such notice in which to comply.
Thereafter, Blanchard assigned the lease to Fourchon Docks, Inc. On December 30, 1981, the 1973 and 1977 leases were amended.[2] Subsequently, Fourchon Docks, Inc. formally changed its name to Jolin, Inc. (Jolin).
On April 6, 1989, Jolin allegedly sold all assets and improvements located on the leased premises to Belle Pass Terminal, Inc. (Belle Pass). On May 22, 1990, Cail-louet filed a petition alleging that Jolin sold its interest in the leased premises to Belle Pass in contravention of the lease amendments, which allegedly prohibited the sublease of the premises. Caillouet also alleged that, although Jolin was required to maintain liability insurance naming Cail-louet as an additional insured, Jolin failed to do so. Caillouet claimed that, as a result of these alleged breaches, defendants were issued a notice to vacate the premises within five days; Caillouet requested that the court rescind the leases and order defendants to vacate the premises.
According to Caillouet, despite receipt of this notice to vacate, Jolin failed to surrender the leased premises and continued to tender the monthly rental payments to Cail-louet. The payments were mailed to the post office box of the law office of one of the principals of Caillouet. Caillouet placed the monthly rentals in the registry of the court.
On January 24, 1991, Milchem Incorporated and Milpark (Milchem) filed a petition of intervention, alleging that, pursuant to its sub-lease with the parties and its accelerated payments pursuant to a federal court judgment, Milchem was entitled to peaceable possession of the property.
Despite the pending litigation, Caillouet continued to send Jolin monthly statements regarding the rent, and Jolin continued to mail the monthly rentals until March, 1991, when Jolin ceased making monthly payments. By letter, dated May 20,1991, Cail-louet notified Jolin and Blanchard that the leases had been breached by the failure to make the rental payments in accordance with the terms of the leases. On May 22, 1991, Jolin received the written notice that the rental payments were due. Blanchard received said notice on May 23, 1991.
Under the terms of the leases, Jolin and/or Blanchard had ten days from receipt of the notice to fulfill the obligations under the leases. On June 3, 1991, twelve calendar days after Jolin received notice and eleven calendar days after Blanchard received notice, Blanchard personally tendered payment to two of the principals of Caillouet, both of whom refused to accept payment. By letter, dated July 19, 1991, Caillouet issued Jolin and Blanchard a notice to vacate, which was received on or about July 25, 1991.
On August 23, 1991, Caillouet filed the instant rule to evict Jolin. In its rule, *1146 Caillouet alleged that Jolin failed to pay its monthly rental in accordance with the terms of the 1973 and the 1977 leases, as amended. Caillouet alleged that it issued a notice of default on May 20, 1991, giving Jolin ten days within which to cure the default. Caillouet further alleged that Jo-lin failed to cure the default within the time frame allowed and that it thereafter issued a notice to vacate the premises. Caillouet requested that the court evict Jolin from the leased premises.
On October 10,1991, Jolin filed a dilatory exception pleading the objection of nonjoin-der of a necessary party and a peremptory exception pleading the objection of nonjoin-der of an indispensable party. Jolin contended that Belle Pass and other individuals were necessary to the eviction proceeding. Jolin also reasoned that, because Mil-chem intervened in the suit to protect its sublease, Milchem was an indispensable party in that a complete adjudication on the rule to evict could not be made without its joinder.
Prior to the hearing on the rule to evict, the trial court determined that Milchem was not an indispensable party and that Belle Pass and the other named individuals were not necessary parties to the eviction proceeding. After a hearing on the rule to evict, the trial court also determined that Jolin failed to pay the rent as due under the terms of the leases. Accordingly, the trial court rendered judgment, evicting Jo-lin from the leased properties and casting Jolin for all costs.
From this adverse judgment, Jolin and Blanchard appeal, assigning the following errors:
1. The Court erred in finding that the lease rental payments were not timely.
2. The Court erred in finding that Cail-louet Land Corporation was entitled to evict defendants from the leased premises.
3. The Court erred in assessing Jolin, Inc. for all costs of these proceedings.[3]
4. The Court erred in overruling defendants’ exception of non-joinder of indispensable party.[4]
TIMELINESS OF PAYMENT
Jolin and Blanchard contend that the tender of the rental payment on June 3, 1991, at the law office of one of the principals of Caillouet was timely and that the trial judge erred in finding the tender of payment on such date was untimely. Jolin and Blanchard assert that the ten-day period granted by the lease ended on the weekend, at which time it was impossible to tender payment to Caillouet. Jolin and Blanchard therefore reason that the tender of the payment on June 3 was timely.
LSA-C.C. art. 1784 provides, in pertinent part, that:
When the term for performance of an obligation is not marked by a specific date but is rather a period of time, the term begins to run ... on the day after the occurrence of the event that marks the beginning of the term, and it includes the last day of the period.
LSA-C.C. art. 1785 provides that:
Performance on term must be in accordance with the intent of the parties, or with established usage when the intent cannot be ascertained.
Generally, when a time period is fixed by the parties as a matter of contract, rather than by law or court order, legal holidays are usually included in the computation, even if they occur on the last day of the period. Lambert v. Mutual Life Insurance Company of New York, 431 So.2d 23, 24-25 (La.App. 1st Cir.), writ denied, 438 So.2d 571 (La.1983); Louviere v. Broussard, 420 So.2d 1229, 1231 (La.App. 3rd Cir.1982). See also Fontenot v. Cole, 586 So.2d 730, 731-32 (La.App. 3rd Cir.1991). In Morrison v. State Farm Insurance Company, 503 So.2d 654, 655 (La. *1147 App. 4th Cir.1987), the court noted that an exception to this general rule exists where the intent of the parties is unclear and the last day is not useful for business, according to common usage.
In Morrison, the insured’s policy expired on September 13, 1985, for non-payment of the renewal premium. State Farm issued to the insured an expiration notice, which indicated that if payment was made within twenty-two days after the expiration date, coverage would be provided until March 13, 1986. The insured’s automobile was stolen on the evening of October 4. The twenty-two day period expired on Saturday, October 5, 1985, and the State Farm office was closed. On October 7 (twenty-four calendar days after the expiration date), the insured tendered payment, which was refused, and made a claim for the theft. The court determined that the notice was ambiguous in that it failed to specify whether the twenty-two day grace period included legal holidays or days on which the insurer was closed for business. The court read the policy broadly in favor of coverage and determined that the October 7 payment was timely.
In the instant case, it is undisputed that for the past several years Jolin and Blanchard made rental payments to Caillouet by mailing the payments to the law office of one of the principals of Caillouet. The contract of lease, which is the law between the parties, specified a period of time for performance, namely ten days. However, the lease failed to specify whether this grace period included weekends, legal holidays, or days on which the law office, where the rental payments were normally received by mail, was closed. Moreover, the evidence substantiated the lessee’s claim that performance on the tenth day would have been impossible. Adam Woods, the supervisor of mail processing, testified that the Thibodaux post office is not a twenty-four hour facility. Woods testified that, although any mail deposited prior to 5:30 p.m. on Saturday or Sunday would be postmarked on that respective day, it would not be delivered until Monday morning. Therefore, even if the lessee had mailed the rental payment on Saturday or Sunday (the tenth day after receipt of the notice for Jolin and Blanchard, respectively), it would have been impossible for Cail-louet to have received said payment prior to Monday, June 3, the day on which Blanchard personally tendered payment. Because the last day of the grace period fell on a day which was not useful for business according to the common usage of the parties, Jolin and Blanchard should have been given until the business day following the expiration of the grace period within which to perform. Therefore, we find that the tender on Monday, June 3, 1991, was timely and that the trial court erred in finding that said payment was untimely. Accordingly, we find that the trial court erred in evicting Jolin and Blanchard.
CONCLUSION
For the above reasons, the judgment of the trial court, evicting defendants, Jolin and Blanchard, and casting them for costs is reversed. Caillouet is cast for all costs.
REVERSED.

. The Blanchards remained personally obligated under the lease assignment.

. The Blanchards personally signed the amended leases and agreed to remain liable to Cail-louet under the leases.

. This assignment of error was not briefed on appeal. Therefore, it is considered abandoned. See Uniform Rules-Courts of Appeal, Rule 2-12.4.

. The record is devoid of any judgment disposing of the issues raised in the exceptions. Therefore, the trial court’s rulings on these exceptions, which have never been reduced to judgment, are not before us on appeal.