PRUDENTIAL CAROLINAS
REALTY, Plaintiff,

v.

CAMBRIDGE DEVELOPMENT CORPO-
RATION, 111 Tradd, Inc., and Resolu-
tion Trust Corporation as Conservator
for Cooper River Federal Savings &
Loan Association, Defendants.

Civ. A. No. 2:93–0412–18.

United States District Court,
D. South Carolina,
Charleston Division.

March 1, 1994.

Amended Order March 8, 1994.

John Hamilton Smith, Charleston, SC, for plaintiff.

Bruce E. Miller, Charleston, SC, Frank M. Cisa, John J. Dodds, III, Mt. Pleasant, SC, for defendants.

### ORDER

NORTON, District Judge.

This matter is before the court upon Defendant's, Resolution Trust Corporation's (hereinafter "RTC"), motion for summary judgment on the cross-claim filed by it against the other Defendants.

### I. BACKGROUND

Plaintiff initiated this interpleader action seeking the permission of the court to deposit with the Clerk of Court the sum of $50,-000.00. Plaintiff was holding $50,000.00 in accordance with an Agreement to Buy and Sell Real Estate entered into by the RTC and Defendant Cambridge Development Corporation (hereinafter "Cambridge").

The RTC timely filed an answer and cross-claimed against the other Defendants assert-ing its entitlement to monies held by Plaintiff in accordance with the express terms of the aforementioned agreement. Defendant, 111 Tradd, Inc. (hereinafter "111 Tradd"), like-wise filed an answer requesting that the court award it all monies held by Plaintiff. Defendant Cambridge was adjudged in default as to the RTC's cross-claim on July 23, 1993.

In a previous order of this court, Plaintiff was ordered to pay to the Clerk of Court the sum of $50,000.00 plus accrued interest. Plaintiff was dismissed from this action upon such payment and by agreement of Defendants. Order, p. 1 (dated January 4, 1994).

### II. FACTS

Prudential Charleston Area Realty was the listing agent for Cooper River Federal Savings Bank in accordance with an exclusive Right to Sell Listing Agreement dated February 10, 1992. This relationship continued with the RTC after June 5, 1992.

On September 9, 1992, Cambridge, through its President, E. Butch Clark (hereinafter "Clark"), entered into a Contract for Sale of Real Estate (hereinafter "Contract") with the RTC. The Contract was signed by the respective representatives of the RTC and Cambridge (Clark) on that date, as well as by the listing agent, T. Michele Badrov (hereinafter "Badrov").

The Contract expressly provided that the sum of $50,000.00 would be deposited by Cambridge with Prudential Realty as an earnest money deposit. The Contract further provided that Cambridge could withdraw the Contract for any reason within sixty (60) days after execution of the Contract by both parties, and further, if the Contract was withdrawn prior to the expiration of the sixty (60) day period, the earnest money deposit would be refunded to Cambridge. Withdrawal of the Contract after the initial sixty (60) day period by Cambridge would result in forfeiture of the earnest money deposit to the RTC. Another Contract provision required all notices, i.e., a notice to withdraw the contract, be personally delivered or mailed to J. Robert Greene (hereinafter "Greene"), Managing Agent for the RTC. Greene Affidavit, p. 2–3.

On September 16, 1992, Badrov was to meet Clark at SouthTrust Bank for delivery of the $50,000.00 earnest money deposit. When she arrived, J. Edward Kale, III (hereinafter "Kale"), introduced himself as Clark's associate who was to meet with them also. Kale Affidavit, p. 1. Clark telephoned and told both Kale and Badrov that he had car trouble and would be unable to meet with them. *Id.;* Clark Affidavit, p. 1. Clark also told Badrov that both Kale and 111 Tradd were going to be representatives of Cambridge and working with him in the negotiation and purchase of this property. Clark Affidavit, p. 1–2; Badrov Affidavit, p. 2 (Badrov's Affidavit states that, during the phone conversation of September 16, 1992, Clark advised her that the only involvement of 111 Tradd was as a source of funds for Cambridge. Prior to September 16, 1992, Badrov states that she had no knowledge of 111 Tradd.) Kale delivered the $50,000.00 earnest money deposit check. Kale Affidavit, p. 1. Kale also delivered a proposed escrow agreement to Badrov on that same date. *Id.* The proposed escrow agreement was never executed by the RTC.[1] The execution of the escrow agreement by the RTC was not a condition of the deposit of the earnest money deposit with SouthTrust Bank.

On November 9, 1992, 111 Tradd, through Kale, delivered to John Wylder, broker in charge at Prudential Carolinas Realty, a letter purporting to rescind the Contract which had been entered into by the RTC and Cambridge.[2] The letter was printed on the letterhead of 111 Tradd and was signed by Kale, as President of 111 Tradd.[3] 111 Tradd argues that Cambridge, Clark, 111 Tradd and Kale all intended for the letter to be notice to the RTC's agent of the buyer's intent to rescind the Contract unless a written extension of the 60 day due diligence was received. Clark Affidavit, p. 2. A written extension of the 60 day due diligence period under the Contract was never received by Clark, Cambridge, Kale or 111 Tradd. *Id.* The RTC argues that Cambridge never advised the RTC that it was desirous of withdrawing the Contract that had been entered into by it and the RTC.

On November 12, 1992, a meeting was held between James E. Butterworth, Jr. (hereinafter "Butterworth") and Robert A. Newton (hereinafter "Newton"), on behalf of the RTC, and Clark of Cambridge. During this meeting, Clark insisted that Cambridge was prepared to go forward on the Contract which had been entered into by the RTC and Cambridge, but only if the RTC was willing to finance. Clark Affidavit, p. 2–3; Newton Affidavit, p. 2–3; Butterworth Affidavit, p. 2. Both Butterworth and Newton stated that no RTC financing would be available. Clark Affidavit, p. 3; Butterworth Affidavit, p. 2–3. Butterworth told Clark at that meeting that Cambridge had until 5:00 p.m. that day, namely November 12, 1992, to cancel or oth-

---

**1.** The RTC further states that it never received a copy of the proposed escrow agreement and was unaware of the existence of Kale or 111 Tradd before November 9, 1992—the date 111 Tradd proposed to withdraw the Contract between Cambridge and the RTC. Robert A. Newton Affidavit, p. 2 (RTC employee); James E. Butterworth Affidavit, p. 2 (RTC employee); Greene Affidavit, p. 3; Badrov Affidavit, p. 2–3 (Badrov states that she told Clark that she "would promptly present the proposed Escrow Agreement to Mr. J. Robert Greene as managing agent for the [RTC]." Badrov further states that "[i]mmediately following the deposit of the earnest money, [she] delivered the proposed Escrow Agreement to the [RTC]." She states that the RTC advised her that the proposed escrow agreement was unacceptable.)

**2.** Badrov states the following:
Earlier in the day on November 9, 1992, I had advised Cambridge ..., by and through Mr. Clark, that the sixty (60) day due diligence period expired on November 9, 1992 and, accordingly, any notice of withdrawal of the contact [sic] should be taken directly to Mr. Greene of the [RTC]. I further advised Mr. Clark that I was not at the office, rather that I was home ill, and, accordingly, any letter purporting to rescind the contract should be delivered directly to Mr. Greene, managing agent for the [RTC]. Notwithstanding my instructions to Mr. Clark, the abovementioned letter was delivered to my broker in charge on or about 5:00 o'clock p.m. on November 9, 1992.
Badrov Affidavit, p. 4.

**3.** Kale states in his affidavit that he had no Cambridge letterhead; therefore, he delivered the notice to rescind the contract on 111 Tradd's stationary because Badrov had been informed that 111 Tradd also had authority to handle the negotiation and purchase of the property. Kale Affidavit, p. 2.

erwise withdraw the subject Contract. Otherwise, Clark was advised that the earnest money deposit would be considered forfeited to the RTC. Butterworth Affidavit, p. 2–3. At no time prior to 5:00 p.m. on November 12, 1992, nor at any time prior thereto or after that date, did Cambridge or Clark advise the RTC of withdrawal or cancellation of the Contract between the RTC and Cambridge. Newton Affidavit, p. 2–3; Butterworth Affidavit, p. 2–3; Greene Affidavit, p. 3–4; Badrov Affidavit, p. 4–5. Clark, however, states that he conveyed the fact that his businesses could not purchase the property that was the subject of the Contract while at the meeting on November 12, 1992.

### III. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed. R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' [Cite omitted]. 'The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party].' [Cite omitted].

*Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992). *See also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). However, "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet v. Kentucky Central Life Ins. Co.*, 950 F.2d 931 (4th Cir.1991).

### IV. ANALYSIS

The RTC asserts that the Contract entered into by it and Cambridge expressly and unambiguously sets forth the period within which the contract could be withdrawn, and further, the precise manner in which notice of withdrawal was to be made. The RTC argues that neither the time period nor the manner was adhered to in the case at bar and, therefore, it should be awarded summary judgment on its cross-claim. Specifically, the RTC argues that any notice of withdrawal submitted by 111 Tradd is wholly ineffective, as 111 Tradd was not a party to the contract in dispute and, furthermore, as the proposed notice given was not in compliance with the manner to withdraw set forth in the Contract.

111 Tradd, however, contends that Cambridge did give notice of withdrawal of the Contract and that the notice clause in the Contract is not the exclusive method of giving notice of withdrawal from the Contract. Furthermore, 111 Tradd argues that the RTC waived its sixty day withdrawal period and also the method of notice by its actions during the November 12, 1993 meeting between it and Clark.

#### A. Relevant Contract Provisions

The September 9, 1992 Contract between the RTC and Cambridge states that a

[b]uyer may withdraw this Contract for any reason within Sixty (60) Days after

execution of this Contract by both Parties. If the Buyer elects to declare this Contract null and void before the Sixty (60) Day period then Seller shall return the Fifty Thousand ($50,000.00) Dollars Earnest Money to the Buyer.

Buyer and Seller agree that the Buyer will have the initial Sixty (60) Day period as a due diligence time period to make certain determinations regarding physical characteristics of the property. Upon discovery of property conditions that are unacceptable to the Buyer, the Buyer may withdraw the offer and the Earnest Money will be refunded if the withdrawal notice is received by Seller prior to Sixty (60) Days from execution of the contract. Withdrawal of the contract after the initial Sixty (60) Day period by Buyer will result in forfeiture of Earnest Money.

Contract, p. 6 (Exhibit "B") (emphasis added).

The Contract further states that

[a]ny notice or election required or permitted to be given or served by any party hereto upon any other party shall be deemed given or served in accordance with the provisions of this Contract when delivered or mailed as follows: notices shall be personally delivered or mailed in a sealed wrapper by United States registered or certified mail, return receipt requested, postage prepaid or delivered to a courier who guarantees overnight delivery, properly addressed as follows:

In the case of notices directed to Seller:

Cooper River Federal Savings Association

2170 Ashley Phosphate Road

North Charleston, S.C. 29418

Attention:  Mr. J. Robert Greene

Managing Agent

\*    \*    \*    \*    \*    \*

If to Purchaser:

Cambridge Development Company

800 Harbor Oak Drive

Charleston, S[.]C[.] 29412

*Id.* at p. 3.

Two other relevant provisions relate to "assignments" and "time."

*ASSIGNMENT:* Purchaser shall not assign its rights, duties or obligations under this Contract without the prior written consent of Seller, which approval shall be at the sole discretion of Seller.

*Id.* at p. 4.

*TIME:* Time is of the essence of this Contract and all the conditions thereof.

*Id.*

### B.  Timely Notice

■  Timely notice was given in this case. The Contract was executed on September 9, 1992. The buyer, Cambridge, therefore had until November 9, 1992, to withdraw the Contract.[4] The letter of 111 Tradd purporting to withdraw the Contract between Cambridge and the RTC was delivered to John Wylder, broker in charge at Prudential Carolinas Realty, on November 9, 1992, *albeit* in violation of the express terms of the contract, as discussed below. *See infra* (Section IV.C. "Ineffective Notice").

### C.  Ineffective Notice

#### 1.  Invalid Assignment

■  There is some dispute in this case as to whether the RTC had any knowledge of 111 Tradd prior to November 9, 1992. There is, however, no dispute that any alleged assignment of Cambridge's rights in the Contract at issue to 111 Tradd was not done in compliance with the express terms of the Contract. Kale and Clark, in their affidavits, state that the escrow agreement was presented to Badrov on September 16, 1992, because 111 Tradd monies were being used for the earnest money deposit and that the escrow agreement was "Cambridge's assignment of its rights of the $50,000.00 to Tradd." Kale Affidavit, p. 1; Clark Affidavit, p. 2. The Contract expressly states that:

---

4.  The sixty (60) day time period expired on November 8, 1992, which was a Sunday. Therefore, Cambridge had until the following Monday, November 9, 1992, in which to present their notice to withdraw the Contract. *See, e.g., Pick-* *ens v. State Farm Mut. Auto. Ins. Co.,* 246 S.C. 380, 144 S.E.2d 68, 71 (1965) (When the last day of a time period falls on a Sunday, response on the following day is timely and effective.).

Purchaser shall not assign its rights, duties or obligations under this Contract without the prior written consent of Seller, which approval shall be at the sole discretion of Seller.

Contract, p. 4. The RTC never gave written consent for an assignment to take place in this case.[5]

Furthermore, the RTC states that it never even was aware of 111 Tradd prior to November 9, 1992, the date of the proposed withdrawal from the Contract. Even if the RTC were aware of 111 Tradd and irrespective of the invalid assignment, this court finds that the proposed notice of withdrawal of the Contract was still incorrectly presented. *See infra* at p. 261 (Section IV.C.2. "Invalid Notice").

### 2. Invalid Notice

■ The Contract specifically provides the manner in which any notice or election permitted under the Contract is to be given:

Any notice or election required or permitted to be given or served by any party hereto upon any other party **shall be deemed given or served in accordance with the provisions of this Contract when delivered or mailed as follows: notices shall be personally delivered or mailed in a sealed wrapper by United States registered or certified mail, return receipt requested, postage prepaid or delivered to a courier who guarantees overnight delivery, properly addressed as follows:**

**In the case of notices directed to Seller: Cooper River Federal Savings Association**

**2170 Ashley Phosphate Road North Charleston, S.C. 29418**

**Attention: Mr. J. Robert Greene Managing Agent**

\* \* \* \* \* \*

If to Purchaser:

Cambridge Development Company

800 Harbor Oak Drive

Charleston, S[.]C[.] 29412

Contract, p. 3 (emphasis added). This Contract provision is not ambiguous.

The purported notice in the case at bar, regardless of the fact that it was given by 111 Tradd on behalf of Cambridge, was not given in accordance with the express, unambiguous provisions of the Contract stated above. The purported notice was given to John Wylder, broker in charge at Prudential Carolinas Realty. Under the provisions of the Contract, the notice to withdraw should have been given personally or mailed in a sealed envelope by registered or certified mail, return receipt requested, postage prepaid, or delivered to a courier who guarantees overnight delivery, addressed to Cooper River Federal Savings Association to the attention of Mr. J. Robert Greene, Managing Agent. This was not done.

■ Clark states that he even stated in the November 12, 1992 meeting between himself, Butterworth and Newton, that his company could not go through with the Contract. This purported notice to withdraw, if it were such, was also not in compliance with the express, unambiguous conditions of the Contract, as stated above.

■ 111 Tradd does not dispute that the above cited Contract provision states that notice "shall be deemed given" when given by the listed method. 111 Tradd's Memorandum, p. 5–6. 111 Tradd, however, states that the clause does not state that it is the "exclusive" method of giving notice. 111 Tradd therefore apparently assumed that it could choose an alternate way of giving notice to the RTC and also choose that this alternate way would be equivalent to "notice deemed given." This argument simply cannot stand. The Contract provision is clear and unambiguous. 111 Tradd goes on to state that "[i]f a party were to give verbal notice with wit-

---

**5.** 111 Tradd argues that when it submitted the proposed notice to withdraw and the escrow agreement on September 16, 1992, on behalf of Cambridge, the escrow agreement's terms controlled from that date forward and the Contract assignment provision no longer applied. This court finds this scenario to be untenable; such a finding would vitiate the meaning and purpose of the Contract's assignment provision wherein the RTC maintains control of any assignments and a buyer is not allowed unilaterally to assign its interests in the Contract.

nesses, the RTC's position, according to the Contract, [would be that] this verbal notice would be ineffective." This court does not find this result to be so shocking or unfair. The Contract is clear as to the manner in which a notice to withdraw should be given. Indeed, Clark's alleged verbal notice of withdrawal during the November 12, 1992, was obviously not accepted as "notice deemed given" by the RTC nor should it have been, as it was not in compliance with the terms of the Contract.

■ 111 Tradd further argues that the RTC waived its notice provision in the Contract by extending the date to withdraw to November 12, 1992.[6] There is no indication that the manner in which to withdraw was ever discussed at that November 12, 1992 meeting. This court can find no facts to support an argument that the method of notice, as stated in the Contract, was somehow waived during the discussions in the November 12, 1992 meeting. If anything, Clark's alleged statement that he could not follow through with the Contract at that meeting and this resulting lawsuit indicate that the RTC expected notice to be given in compliance with the express terms of the Contract entered into by the RTC and Cambridge. The parties have no justifiable reason for providing notice of withdrawal in any other manner.

In sum, this court finds that (1) 111 Tradd was not a proper party to the Contract which could effect a withdrawal of the Contract and (2) that any purported notice, regardless of the bearer of such notice, was not made in compliance with the express terms of the Contract and was therefore ineffective.

### V. CONCLUSION

It is therefore,

ORDERED, that Defendant's, Resolution Trust Corporation's, motion for summary judgment on its cross-claim be GRANTED.

AND IT IS SO ORDERED.

### AMENDED ORDER

Plaintiff initiated this interpleader action seeking the permission of the court to depos-

it with the Clerk of Court the sum of $50,-000.00. By a previous order of this court in January of 1994, Plaintiff was ordered to pay to the Clerk of Court the sum of $50,000.00 plus accrued interest. Plaintiff was dismissed from this action upon such payment and by agreement of Defendants. Order, p. 1 (dated January 4, 1994). Also by a previous order of this court in March of 1994, the Resolution Trust Corporation was granted summary judgment on its cross-claim. The Clerk of Court is therefore directed to disburse the monies held in the sum of $51,-795.85 plus accrued interest to the Resolution Trust Corporation.

AND IT IS SO ORDERED.

---

6. Clark was told at the November 12, 1992 meeting between himself, Butterworth and Newton that Cambridge had until 5:00 p.m. that day, namely November 12, 1992, to cancel or otherwise withdraw from the Contract.