**SWISS BANK CORPORATION and O'Connor Investments, Plaintiffs–Appellants,**

v.

**DRESSER INDUSTRIES, INC., Defendant–Appellee.**

No. 97–2431.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1998.

Decided April 1, 1998.

Paul E. Dengel (argued), Schiff, Hardin & Waite, Chicago, IL, for Plaintiffs–Appellants.

Philip S. Beck, Peter B. Bensinger Jr. (argued), Andre M. Pauka, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and EVANS, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Swiss Bank, appeals from the dismissal on the pleadings of its suit for breach of contract against Dresser Industries. The basis for federal jurisdiction is diversity of citizenship, the governing law is that of Delaware by virtue of the choice of law provision in the contract, and the principal question that we are asked to decide is whether when performance of a contract is due on a legal holiday the performing party is entitled to defer performance until the first working day after the holiday.

The contract, dated April 5, 1991, is a warrant to purchase one million shares of Dresser's common stock from Dresser at a specified price. The warrant provides that it is issued pursuant to a Stock Purchase and Assignment Agreement between the parties and may be exercised at any time "prior to five years from the Closing Date, as defined in the Stock Purchase and Assignment Agreement dated as of April 5, 1991." Centered on the first page of the warrant, between the title and the first paragraph (which is the paragraph in which the language we just quoted appears), are two underlined legends: "Not Transferable or Exercisable Except Upon Conditions Herein Specified" and "Void After Five Years From Date of Issuance."

The purchaser of the warrant assigned it to O'Connor Investments. Dresser issued

O'Connor a replacement certificate that is identical to the original warrant except that the words "prior to five years from the Closing Date, as defined in the Stock Purchase and Assignment Agreement dated as of April 5, 1991," are replaced by "prior to April 5, 1996." The second page of this document retains the original formulation—the warrant may be exercised "at any time ... prior to five years from the Closing Date." Exercise is defined as the receipt by Dresser of various documents plus funds in an amount equal to the price due under the terms of the warrant. Swiss Bank bought the warrant from O'Connor Investments.

April 5, 1996, was a legal holiday in Delaware (Good Friday), and all the stock exchanges that trade Dresser stock were closed. Dresser's office, although it is located in Texas, a state in which Good Friday is not a legal holiday, was also closed. Swiss Bank did not try to exercise the warrant on or before April 5. It waited until the following Monday, April 8, to deliver the required documents and funds to Dresser's office. Dresser refused to accept them, claiming that the warrant had lapsed. The market price was higher than the warrant price, and as a result Swiss Bank was out several million dollars by virtue of not being able to exercise the warrant; and so it brought this suit. The record does not reveal why Swiss Bank waited until the last (actually, as we shall see, after the last) minute to try to exercise the option, since it was in the money before April 5. Because the markets were closed on the fifth, the net value of the warrant—several million dollars, as we have said—was fixed when the market closed on the fourth. Another puzzle, also unnecessary to unravel, is why O'Connor is named as a plaintiff, since it sold the warrant to Swiss Bank before the bank tried to exercise it.

The appeal presents two questions. The first is whether the warrant had to be exercised no later than April 4 ("prior to April 5"), and the second is, if not—if exercise on April 5 would have been timely—whether Delaware law bounced the exercise day over to Monday because the fifth was a legal holiday and the next two days were the weekend. If Delaware law didn't do this,

then since Swiss Bank did not attempt to exercise the warrant until the eighth, the exercise was untimely.

■ There is sufficient ambiguity in the text (or rather texts) of the warrant to preclude the dismissal of Swiss Bank's suit on the first ground, that the deadline for exercising the warrant was April 4. It would be a solid ground if the only relevant contractual text were "prior to April 5, 1996," since the quoted words mean before April 5, 1996, and April 5 is not before April 5. But "prior to April 5, 1996" is contradicted in two places in the replacement certificate—in the opening legend ("Void After Five Years From Date of Original Issuance") and in a statement on the second page of the certificate that the warrant may be exercised at any time "prior to five years from the Closing Date." This is the language of the original warrant, and it implies—just as "within five years" would, *Manhattan Gear & Instrument Co. v. 2350 Linden Blvd. Corp.*, 27 A.D.2d 570, 276 N.Y.S.2d 319 (1966)—by the end of April 5. A week from Monday is Monday, not Sunday. *Livesey v. Copps Corp.*, 90 Wis.2d 577, 280 N.W.2d 339, 341–42 (1979). Although the warrant states that "descriptive headings" are not a part of it, the legend "Void After Five Years" is not a descriptive heading. It is prefatory to the entire warrant, and is a warning or reminder rather than a heading. Furthermore, the warrant identifies itself as "Certificate No. 1" of "April 5, 1991," and states that it is "being reissued," implying no material change in the original warrant other than, of course, the identity of the purchaser. Deletion of the reference in the original warrant to the closing date in the Stock Purchase and Assignment Agreement and its replacement by "prior to April 5, 1996" may have been intended merely to eliminate a reference to an agreement to which the new purchaser was not a party, rather than to change the exercise date.

■ It would require evidence, therefore, to show that the parties meant to advance the exercise date by a day when the warrant was reissued to O'Connor. So, since the suit was dismissed on the pleadings, we must assume that Swiss Bank had until April 5 to exercise. But how to get from then to

the eighth? We reject the bank's argument that it was prevented from exercising the warrant on the fifth because Dresser's office was closed. It is true that if the promisor (Dresser) prevents the performing party (Swiss Bank) from performing on the date the contract specifies for performance (and we are assuming that April 5, 1996, was that date), the promisor cannot repudiate the contract on the ground that the other party has broken it. E.g., *Wells v. Lee Builders, Inc.*, 99 A.2d 620, 621 (Del.1953); *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*, 135 A.D.2d 891, 522 N.Y.S.2d 292 (1987); *Ray Thomas, Inc. v. Cowan*, 99 Cal.App. 140, 277 P. 1086, 1088 (1929). But since Swiss Bank did not try to exercise the warrant on April 5, Dresser did not prevent the bank from doing anything. If you lock the door to a room, you do not prevent anyone from leaving the room if there is nobody in it.

■ It's not as if Dresser had told Swiss Bank that it would not accept delivery of the documents and funds on April 5. That would be a case of anticipatory repudiation of the contract (if, as we are assuming, delivery on April 5 would have been timely), and Swiss Bank would not have had to attempt delivery. See *Dehahn v. Innes*, 356 A.2d 711, 719 (Me.1976); *United California Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 681 P.2d 390, 435 (1983); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.22, pp. 480–81 (1990). Futile gestures are not necessary to preserve contractual rights. *Dehahn v. Innes, supra*, 356 A.2d at 719.

■ But it is not suggested that Dresser told Swiss Bank not to bother trying to deliver the documents on the fifth; and when a performing party is not told and does not know that his tender of performance will be refused, he must tender, rather than force a court to decide years later what would have happened had he tendered. See *Wells v. Lee Builders, Inc., supra*, 99 A.2d at 624; see also *Keppelon v. W.M. Ritter Flooring Corp.*, 97 N.J.L. 200, 116 A. 491, 492 (1922). "Mere doubts by one party that the other party will perform when performance is due will not excuse the first party from performing," 2 Farnsworth, *supra*, § 8.23, p. 486 (footnote omitted), especially since the doubter can request assurances from the other party that performance will not be futile. *C.L. Maddox, Inc. v. Coalfield Services, Inc.*, 51 F.3d 76, 80–81 (7th Cir.1995); *Restatement (Second) of Contracts* § 251 (1981); 2 Farnsworth, *supra*, §§ 8.23, 8.23a, pp. 486–95. That of course was not done here.

Anyway we cannot find anything in the contract that makes delivery conditional on Dresser's office being open. All the contract requires is receipt of documents plus funds. Since the U.S. Postal Service and private courier services deliver mail on Good Friday, and since mail and courier packages delivered to office buildings outside of working hours are not just piled up on the sidewalk but are deposited inside the building through a freight or night entrance open at all hours precisely to receive deliveries outside of working hours, Swiss Bank's argument that Dresser prevented it from performing on time would require that the word "received" as used in the contract mean received not at but inside Dresser's business office. The effect would be to advance the exercise date from midnight on April 5 to 5 p.m., or even earlier if Dresser closed earlier. Swiss Bank's rights would be rendered uncertain, perhaps radically so. Suppose that as a result of a strike or a fire unknown to Swiss Bank, Dresser, through no fault of its own, had to close its office for a week beginning on April 1. Under the bank's proposed interpretation, the last day for exercising the warrant would be March 31—a strange interpretation of "by April 5" or "no later than April 5."

■ All that is left for Swiss Bank to argue is that Delaware's having made Good Friday a legal holiday allows all contractual deadlines that happen to fall on Good Friday to be extended, presumably at the option of either party, to the following Monday, since Saturday is also a legal holiday in Delaware. Del.Code Ann. tit. I, § 501(a). The statute does not mention Sunday, but all agree that Sunday has at least the same effect on a contract as a legal holiday, and maybe, as we shall see, more.

■ There are surprisingly few cases (none from Delaware) on whether a state's

legal holiday operates to extend the time for performing contracts that specify that date as the deadline for performance. Swiss Bank casts about for analogies. It cites an old common law rule that Sunday is *"dies non juridicus"*—but this means only that judicial acts performed on Sunday are void. *Chester v. Arkansas State Bd.*, 245 Ark. 846, 435 S.W.2d 100, 102–03 (1968); *Ex parte Seward*, 299 Mo. 385, 253 S.W. 356, 359 (1923). The rule has nothing to do with the validity of contracts or the deadlines for performing them, see 14 Walter H.E. Jaeger, *Williston on Contracts* § 1700 (3d ed.1972), unless the performance required by the contract is the commencement of legal proceedings on a day on which the relevant court is not open. E.g., *Prudential Ins. Co. v. Rozar*, 162 A.2d 715, 716 (Del.Ch.1960).

Statutes sometimes make it illegal to do business on Sunday, see 7 Richard A. Lord, *Williston on Contracts* § 14:1, pp. 2–5 (4th ed.1997); 6A Arthur Linton Corbin, *Corbin on Contracts* § 1477, p. 623 (1962), and when performance of a contract falls due on a Sunday such a statute gives the performing party the kind of impossibility defense that Swiss Bank would have had either in the case just put in which the required performance is filing a suit in a court that is closed for the day or if Dresser had prevented Swiss Bank from exercising the warrant on April 5; in either case the due date would be kicked over to the next working day. 7 Lord, *supra*, § 14:1, p. 13. Delaware does not have such a statute.

Other statutes expressly or by implication excuse the nonperformance of contracts on Sunday without prohibiting Sunday performance. See, e.g., *Flowers v. Provident Life & Accident Ins. Co.*, 713 S.W.2d 69 (Tenn. 1986); *Foray v. Bejcek*, 614 P.2d 1090 (1980); *Allstate Ins. Co. v. Stephens*, 239 Ga. 717, 238 S.E.2d 382 (1977); *First National Bank v. Mobil Oil Corp.*, 272 Or. 672, 538 P.2d 919, 923 (1975); *Watson v. Kresse*, 130 N.W.2d 602, 606 (N.D.1964). Delaware has no statute that excuses Sunday nonperformance expressly, and we can find no case in which a Delaware court has construed a statute of the state to excuse such nonperformance by implication. But in the wake or under the influence of the statutory movement, a common law rule allowing such an excuse emerged. *Pickens v. State Farm Mutual Automobile Ins. Co.*, 246 S.C. 380, 144 S.E.2d 68, 71 (1965); *Dean v. Freeze*, 213 Ark. 264, 209 S.W.2d 876, 878 (1948); *Breen v. Rhode Island Ins. Co.*, 352 Pa. 217, 42 A.2d 556, 558 (1945); *Glover v. Glover*, 416 S.W.2d 500, 503 (Tex.Civ.App.1967); *Prudential Carolinas Realty v. Cambridge Development Corp.*, 872 F.Supp. 256, 260 and n. 4 (D.S.C.1994) (applying South Carolina law), aff'd. mem., 42 F.3d 1386 (4th Cir.1994); *Simkin v. Cole*, 32 Del. 271, 122 A. 191, 192 (1922) (dictum). Today, the excusing rule, whether common law or statute-based, is an anachronism, given the amount of commercial activity on Sundays; and it is therefore rejected in most of the recent decisions, unless, of course, it is embodied in a statute. See *Loyd v. Federal Kemper Life Assurance Co.*, 518 N.W.2d 374 (Ia. 1994); *Caillouet Land Corp. v. Jolin, Inc.*, 602 So.2d 1144, 1146–47 (La.App.1992); *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 116–17 (5th Cir.1996); *Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates Limited Partnership*, 109 Md.App. 217, 674 A.2d 106, 122–23 (1996), aff'd. on other grounds, 346 Md. 122, 695 A.2d 153 (1997); *Green v. Hamilton Int'l Corp.*, 493 F.Supp. 596, 597 and n. 2 (S.D.N.Y.1979). This makes us doubt whether the dictum in *Simkin* is a reliable guide to Delaware law.

■ Even if the rule excusing Sunday nonperformance is the law of Delaware, the extension of the rule to Saturdays or other legal holidays would be absurd. The conduct of business of all kinds on the other legal holidays, including Saturday and Good Friday, has long been at once lawful and commonplace. In an age of rampant interstate and international commerce well illustrated by the contract and the parties in this case, it would inject substantial and gratuitous uncertainty into the performance of contracts to read into every contract that had a deadline an exception for legal holidays. These vary from state to state and of course from country to country, and it will often be unclear which state's or country's holiday should apply to a given contract. Here it is unclear whether it should be Delaware's or Texas's— or perhaps New York's because the stock

covered by the warrant is traded on the New York Stock Exchange.

The rule that we are commending, and that we believe is the rule that Delaware would follow, is, we emphasize, merely a default rule. That is, it is a rule to govern the interpretation of contracts when the parties have failed to make explicit provision for some contingency, such as that performance might be due on a legal holiday. Parties are free to provide an excuse in their contracts, if they wish, for not performing on such a day. We need not consider what if any difference it might make in some cases if, as is not the case here, a legal holiday is created—or abolished—between the making of the contract and the time for performance, thus potentially upsetting the parties' reasonable expectations as of the time of contracting.

Swiss Bank did not exercise the warrant in time, and its suit was therefore properly dismissed.

AFFIRMED.