Martin O. NELSON, Jr., Daniel F. Raider and Nancy E. Lee, and Mitchell Partners, L.P., Petitioners,

v.

FRANK E. BEST INC., Best Universal Lock Co., Best Lock Corporation, a Delaware corporation, and Best Lock Corporation, an Indiana corporation, Respondents.

Civil Action No. 16329.

Court of Chancery of Delaware, New Castle County.

Submitted: May 26, 2000.
Decided: July 5, 2000.
Corrected: Aug. 9, 2000.

Norman M. Monhait, Carmella P. Keener, Rosenthal, Monhait, Gross & Goddess, Wilmington, Delaware, for Petitioners.

A. Gilchrist Sparks, III, Alan J. Stone, and David J. Teklits, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; of counsel: Robert T. Markowski, David M. Kroeger, and Arthur Gollwitzer III, of Jenner & Block, Chicago, Illinois, for Respondents.

## OPINION

STRINE, Vice Chancellor.

Before me are the parties' cross-motions for summary judgment, the resolution of which boils down to a tolling issue in the context of Delaware's appraisal statute: when the last day of the limitations period for making an appraisal demand pursuant to 8 *Del. C.* § 262(d)(2) falls on a Sunday, is the effective deadline for making the demand that Sunday or the Monday immediately afterward?

One of the plaintiffs in this appraisal action, Mitchell Partners, L.P. submitted a demand to defendant Best Lock Corporation ("Best" or the "defendant") on Monday, March 23, 1998, which was twenty-one days after the start of § 262(d)(2)'s twenty-day limitations period. Whereas Mitchell Partners asserts that the final Sunday should not count toward the statutory limitations period and that its demand was therefore timely, Best argues that Mitchell Partners missed the § 262(d)(2) deadline under a plain reading of the statute.

Mitchell Partners' argument that the final Sunday should not count toward the § 262(d)(2) limitations period is premised on what some have called the "Sunday Rule," which holds that when the last day on which certain tasks may be performed falls on a Sunday, "performance on the following day is timely...."[1] Although § 262(d)(2) does not explicitly state that the final Sunday must be excluded from the twenty-day limitations period, Mitchell Partners argues that Delaware common law has long recognized the Sunday Rule and that the General Assembly silently incorporated that common law rule when it enacted § 262(d)(2).

Mitchell Partners argues in the alternative that even if this court were to conclude that Delaware common law did not recognize the Sunday Rule when the General Assembly enacted § 262(d)(2), the statutory deadline must nevertheless be computed by reference to Court of Chancery Rule 6(a), which applies the Sunday Rule to the calculation of deadlines for actions taken in this court. Even if one may read § 262(d)(2) as being inconsistent with Rule 6(a), Mitchell Partners concludes, Rule 6(a) must take precedence because a court rule has "the force and effect of a legislative enactment"[2] and because 10 *Del. C.* § 361(c) states that Court of Chancery rules "supersede all statutory provisions in conflict or inconsistent therewith."

For these reasons, Mitchell Partners asserts that its Monday demand was timely.

Somewhat surprisingly, Delaware case law has yet to address this issue. Nor do the commentators on Delaware law appear to have considered the question.[3] More-

---

1. *See Wilgus v. Salt Pond Investment Co.,* Del. Ch., 498 A.2d 151, 157 & n. 2 (1985) (Sunday Rule stands for "[t]he proposition that when the day for performance under an agreement falls on a Sunday performance on the following day is timely ....") (*citing* 74 AM. JUR.2d *Time* § 17).

2. *Cohee v. Ritchey,* Del.Super., 150 A.2d 830, 831 (1959) (*citing Associated Transport v. Pusey,* 118 A.2d 362, 365 (1955)).

3. *E.g.,* R.F. BALOTTI & J.A. FINKELSTEIN, 1 THE DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS §§ 944[B], at 9–92 to 9–96 (3d ed. 2000 Supp.) (hereinafter "BALOTTI & FINKELSTEIN"); D.A. DREXLER, L.S. BLACK, JR., & A.G. SPARKS, III, 2 DELAWARE CORPORATION LAW AND PRACTICE § 36.04, at 36–6 to 36–10 (1999); R. WARD, JR., E.P. WELCH, A.J. TUREZYN, 2 FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 262.4.1, at GCL–IX–194 to GCL–IX–198 (4 th ed.1999); D.J. WOLFE, JR. & M.A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 8–10(b), at 436–37 (1998); C.R.P. KEATING & J. PERKOWITZ–

over, policy arguments can be made on either side of the issue, and non-controlling case law can arguably be read as supporting either position. As a consequence, reasonable people may differ as to the proper outcome. But after considering Mitchell Partners' arguments and the authorities cited, I conclude that the General Assembly that enacted § 262(d)(2) did not contemplate the exclusion of the final day of the twenty-day deadline when that day happens to fall on a Sunday.

I reach this conclusion for several reasons, the most important of which are the clear language of § 262(d)(2), which states that the period for sending a demand is to expire upon the passage of twenty "days," and the fact that § 262 does not contain any provision stating that Sundays are to be excluded from that limitations period. By contrast, in many other instances the General Assembly has explicitly excluded final Sundays from the calculation of statutory deadlines.

Furthermore, I reject Mitchell Partners' contention that Delaware common law recognized a Sunday Rule generally applicable to statutes at the time of § 262(d)(2)'s enactment. The parties have not cited, nor have I found, any decision in which a Delaware court has explicitly adopted the Sunday Rule in the context of a statute that requires an act to be performed outside the courthouse. More generally, there does not appear to have been any firmly recognized English or American common law applying the Sunday Rule to statutorily required acts that do not implicate the common law concept of *"dies non juridicus,"* which simply means "not a court day." [4] Indeed, the case relied on by Mitchell Partners in support of this proposition, the 1922 case of *Simkin v. Cole,* [5] suggests that Delaware followed instead the common law rule that the Sunday Rule does not apply to a statute unless the legislature has explicitly adopted the Sunday exclusion. The General Assembly's own practice of codifying the Sunday Rule on a case-by-case basis confirms this conclusion and undercuts the notion that the General Assembly's silence in § 262(d)(2) should be construed as a codification of the Sunday Rule in the context of appraisal demands.

Given these factors, together with the strict construction of the appraisal statute required by the Delaware Supreme Court, I conclude that the General Assembly intended that Sundays would be included in the calculation of deadlines for appraisal demands.

I am similarly unconvinced by Mitchell Partners' suggestion that § 262(d)(2) must be read through the lens of Court of Chancery Rule 6(a), which encompasses the Sunday Rule. Given that § 262(d)(2) sets forth the rights and responsibilities of parties in a process that occurs outside this court, Rule 6(a) has no bearing on the § 262(d)(2) deadline. Indeed, Court of Chancery Rule 1 explicitly states that "[t]hese Rules shall govern the *procedure in the Court of Chancery of the State of Delaware....*" [6] The enabling legislation of 10 *Del. C.* § 361(a) contains a similar restriction, providing that this court's authority to make rules is limited to matters relating to *"practice and procedure with respect to ... causes and proceedings in*

---

SOLHEIM, 12B FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5906.75, at 418–20 (1993 rev. ed.) (hereinafter "FLETCHER"); *id.* § 7165.30, at 437–50.

**4.** *Swiss Bank Corp. v. Dresser Industries, Inc.,* 1997 WL 264397, 1997 U.S. Dist. Lexis 6832, at *5 (E.D.Ill. May 9, 1997) (*citing* BLACK'S LAW DICTIONARY (1990)), *aff'd,* 141 F.3d 689, 693 (7th Cir.1998). *See also* BLACK'S

LAW DICTIONARY 466 (7th ed.1999) (a *dies non juridicus* is "[a]ny day exempt from court proceedings, such as a holiday or a Sunday.").

**5.** *Simkin v. Cole,* Del.Super., 122 A. 191 (1922).

**6.** Ct. Ch. R. 1 (emphasis added).

*[the Chancery] Court."*[7] And because the rules of this court do not apply to the demand submission process, the provisions in subsections (c) and (d) of § 361 governing conflicts between the Court of Chancery Rules and statutory provisions are similarly inapplicable. Even more important, embracing the interpretation advanced by Mitchell Partners would violate the basic tenets of the separation of powers doctrine.

Thus I conclude that the § 262(d)(2) limitations period in this case expired on Sunday, March 22, 1998 and that Mitchell Partners failed to submit its appraisal demand on time. I therefore deny its motion for summary judgment and grant Best's cross-motion for the same relief. The following discussion sets forth my reasoning in greater detail.

## I. *Factual Background*

The undisputed facts are relatively few and as follows.

The underlying appraisal action arose out of three cash-out mergers (the "Mergers"), after which the surviving entities were Frank E. Best Inc. ("FEB"), Best Universal Lock Co. ("BUL"), and Best Lock Corporation ("BLC") (collectively, the "Best Companies"). The Mergers were completed pursuant to 8 *Del. C.* §§ 228 and 251 and effective as of March 23, 1998. The three Best Companies later merged into Walter E. Best Company, Inc., which is now known as Best Lock Corporation. Best Lock Corporation and the Best Companies are the defendants (collectively, "Best") in this appraisal action subsequently filed by Mitchell Partners and the other plaintiffs. Mitchell Partners is an investment firm, and Joseph Mitchell, who has a law degree and practiced law for several years before becoming a full-time investor, is the firm's sole general partner.

The motions before me, however, concern only certain shares owned by Mitchell Partners in the Best Companies (the "Disputed Shares"). The Disputed Shares were held in Mitchell Partners' brokerage account at Bear Stearns Securities Corp. and were held of record by the Depository Trust Company ("Cede") until shortly before the Mergers.

Upon learning through the Best Companies' public filings that the Mergers were going to take place, Mitchell Partners asked Bear Stearns to transfer the Disputed Shares to Mitchell Partners' name to facilitate an appraisal demand at the time of the Mergers. Mr. Mitchell requested this transfer both in October 1997 and February 1998, but it did not take place, and he does not appear to have followed up on his requests very diligently.

On March 2, the Best Companies mailed a "Joint Information Statement, Notice of Action Taken Without a Meeting, and Notice of Appraisal Rights" (collectively, the "Notice").[8] The Notice stated that *"[w]ritten demand for appraisal pursuant to Section 262 must be received by the applicable Company no later than March 22, 1998, which is the 20th day after the mailing of this notice."*[9] Mitchell Partners acknowledges having received the Notice on or before March 5, 1998.

But as of March 5, 1998, the transfer of the Disputed Shares from Cede to Mitchell Partners still had not taken place. Thus that same day Mr. Mitchell instructed Bear Stearns to demand appraisal on Mitchell Partners' behalf. To facilitate that process, Mitchell sent Bear Stearns draft demand letters[10] to be forwarded to Cede for submission to the Best Companies.[11] Cede made the demand on March 9, 1998.

---

7. 10 *Del. C.* § 361(a) (emphasis added).

8. Defs. Ex. D at 29.

9. *Id.* (emphasis added).

10. For ease of reference, I refer to "the demand" in the singular.

11. Also on March 5, Mitchell sent appraisal demands to the Best Companies with respect to the 200 FEB shares and 137 BUL shares

On Friday, March 20, 1998, Mitchell Partners received its daily report from Bear Stearns regarding Mitchell Partners' accounts with Bear Stearns. The report indicated that, as of the day before, Bear Stearns was transferring the Disputed Shares to Mitchell Partners' name. As a result, Cede's demand was invalid, because Cede would not "continuously" be the holder of record between the March 9 date of Cede's demand and the effective date of the Merger, as is required by 8 *Del. C.* § 262(a).

Although Mr. Mitchell learned on Friday, March 20 of the potential problem caused by the transfer of the Disputed Shares, he concedes that he did nothing to address it on that date other than call his attorney. As Mitchell explained in an affidavit, "[l]ater that day I tried to reach my attorney, Norman Monhait, to determine if any additional action to demand appraisal was advisable." [12] Upon learning that Monhait was out of the office that day, Mitchell simply left a message. Although Mitchell has explained that he placed the call to Monhait in order to "reassure [him-]self that [the transfer] wasn't a problem," [13] Mitchell did not try to consult any of Monhait's colleagues. Mitchell did not try to deliver a demand that day, whether by mail, by facsimile, or by courier. Nor did he take any action on Saturday, March 21 or Sunday, March 22 with respect to the demand.

On the morning of Monday, March 23, 1998, Mitchell finally spoke with Monhait. Following this conversation, Mitchell "rushed" to fax a demand to the Best Companies concerning the recently transferred Disputed Shares. [14] Mitchell Partners' fax records indicate that the transmission went through shortly after nine o'clock that morning, and Best does not dispute that it received the faxed demand at that time.

Thus the motions before me turn solely on whether the demand Mitchell Partners faxed on Monday, March 23, 1998 was timely under § 262(d)(2).

## II. *Applicable Standards And Provisions*

This court must grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. [15] Although courts recognize that parties do not concede an absence of factual disputes merely because they have filed cross-motions for summary judgment, [16] here the parties acknowledge that no genuine issue of material fact exists concerning the motions at hand. Instead, both assert their entitlement to judgment as a matter of law on the undisputed facts.

Section 262 of Title 8 governs appraisal rights and the conditions under which stockholders may press these rights against the corporations in which they hold stock, and thus § 262 controls the outcome of this dispute.

Because the Mergers were approved pursuant to 8 *Del. C.* § 228, subsection (d)(2) of § 262 sets forth the applicable notice and demand procedures. [17] Mitchell

held of record in Mitchell Partners' own name.

12. Mitchell Aff. ¶ 5.

13. Mitchell Dep. at 125.

14. Mitchell Dep. at 138.

15. Ct. Ch. R. 56; *Fleer Corp. v. Topps Chewing Gum, Inc.*, Del.Supr., 539 A.2d 1060, 1060–62 (1988).

16. *United Vanguard Fund, Inc. v. TakeCare, Inc.*, Del.Supr., 693 A.2d 1076, 1079 (1997).

17. *See* 8 *Del. C.* § 262(d)(2) ("If the merger or consolidation was approved pursuant to § 228 or § 253 of this title, each constituent corporation, either before the effective date of the merger or consolidation or within ten days thereafter, shall notify each of the holders of any class or series of stock of such constituent corporation who are entitled to appraisal rights of the approval of the merger or consolidation and that appraisal rights are available for any or all shares of such class or series of stock of such constituent corporation, and shall include in such notice a copy of this section; . . . .").

Partners acknowledges that the Notice mailed on March 2 complied with § 262(d)(2)'s requirements and therefore triggered the running of the twenty-day limitations period. Subsection (d)(2) states part that "[a]ny stockholder entitled to appraisal rights may, *within 20 days after the date of mailing of such notice*, demand in writing from the surviving or resulting corporation the appraisal of such holder's shares." [18]

■ A dissenting shareholder seeking appraisal under § 262(d)(2) bears the two-fold burden of showing that a demand was timely submitted and that it was actually received by the corporation.[19] The date of a demand is fixed as of the date it is sent,[20] and thus a shareholder need only demonstrate having sent (here by facsimile) its demand by the statutory deadline and that the corporation eventually received it. This contrasts with the requirement under 8 *Del. C.* § 262(d)(1) that dissenting stockholders must actually deliver their appraisal demands by the time of the stockholder vote.

■ Furthermore, Delaware law follows the general rule that where an act must be done within a certain period of time, in computing the time " '[e]ither under a rule of court or a statute, in the absence of anything showing a contrary intent, ... the day on which the act is to be done should be included.' " [21]

In this case, the sole issue before me is the proper construction of § 262(d)(2)'s phrase "within 20 days" and whether Mitchell Partners made a timely demand in compliance with that deadline. I now turn to the decisive question of whether Mitchell Partners has sustained its burden with respect to this showing.

### III. *Legal Analysis*

**A. The Reading Of § 262(d)(2) Most Consistent With The Statute's Language, Prior Judicial Constructions, And General Assembly Practice Is That § 262(d)(2) Does Not Incorporate The Sunday Rule**

■ Resolution of these motions obviously requires an interpretation of § 262(d)(2)'s statement that "[a]ny stockholder entitled to appraisal rights may, *within 20 days after the date of mailing of such notice*, demand in writing from the surviving or resulting corporation the appraisal of such holder's shares." [22]

■ It is well-established that this court must give effect to a statute's plain meaning in order to implement the General Assembly's intent. My job is somewhat more complicated here, where I am asked to interpret a statute that uses the common word "day" but where the larger legal context is such that, in certain situations, the word "day" does not include Sunday when Sunday would be the last permissible day to perform a task.

But the traditional rules of statutory construction require that I give effect to the normal meaning of "day" as including a Sunday – or Sun-*day* – unless there is a firm basis to conclude that the General Assembly intended otherwise. The text of § 262(d)(2) itself provides no basis for

**18.** 8 *Del. C.* § 262(d) (emphasis added).

**19.** *In re Vision Hardware Group, Inc.,* Del.Ch., C.A. No. 13385, 1995 WL 214369, 1995 Del. Ch. Lexis 39, at *4, Allen, C. (1995) (citations omitted), *aff'd without op. sub nom., Young v. Vision Hardware Group, Inc.,* Del.Supr., 676 A.2d 909 (1996); *see also Raab v. Villager Industries. Inc.,* Del.Supr., 355 A.2d 888, 894 (1976), *cert. denied, Mitchell v. Villager Industries, Inc.,* 429 U.S. 853, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976); *Schenley Industries, Inc. v. Curtis,* Del.Supr., 152 A.2d 300, 302 (1959).

**20.** *Raab,* 355 A.2d at 894; *Schenley,* 152 A.2d at 302.

**21.** *Standard Scale & Supply Corp. v. Chappel,* Del.Supr., 141 A. 191, 193 (1928) (*quoting Simkin v. Cole,* 122 A. at 192); *see also Santow v. Ullman,* Del.Supr., 166 A.2d 135, 137 (1960).

**22.** 8 *Del. C.* § 262(d)(2) (emphasis added).

finding such a contrary intent, when the statute states "20 days," rather than "20 days excluding Sunday," "20 business days," or the like.[23] And, contrary to Mitchell Partners' suggestion, the drafters' use of the word "day" elsewhere in § 262 is consistent with a plain reading of the term.[24]

This construction is all the more warranted in light of the General Assembly's statement later in § 262(d)(2) that "[i]f no record date is fixed and the notice is given prior to the effective date, the record date shall be *the close of business on the day next preceding the day on which the notice is given.*"[25] This careful distinction would lead one to expect the drafters to have

been more explicit five sentences earlier had the General Assembly intended that the final Sunday would be excluded from the limitations period for appraisal demands.

Delaware Supreme Court case law requiring a strict construction of 8 *Del. C.* § 262 demand deadlines further constrains me to adhere to the plainest reading of the statute, absent strong evidence of a contrary legislative intent.[26] As the Supreme Court has explained, "[t]he statutory formalities concerning appraisal rights 'furnish an orderly method for withdrawal from a corporation by shareholders who dissent from a merger.'"[27] Thus Dela-

---

**23.** *See, e.g.,* § 262(d)(2)(ii) ("the surviving or resulting corporation shall send such a second notice to all such holders on or *within 10 days* after such effective date; provided, however, that if such second notice is sent *more than 20 days* following the sending of the first notice, such second notice need only be sent to each stockholder who is entitled to appraisal rights and who has demanded appraisal ....") (emphases added); § 262(d)(2) ("each constituent corporation may fix, in advance, a record date that shall be not *more than 10 days* prior to the date the notice is given ....") (emphasis added).

**24.** *See, e.g.,* 8 *Del. C.* § 262(d)(1) ("... the corporation, *not less than 20 days* prior to the meeting, shall notify each of its stockholders who was such on the record date for such meeting with respect to shares for which appraisal rights are available ... that appraisal rights are available for any or all of the shares of the constituent corporations ...") (emphasis added); *id* ("*Within 10 days* after the effective date of such merger or consolidation, the surviving or resulting corporation shall notify each stockholder of each constituent corporation who has complied with this subsection and has not voted in favor of or consented to the merger or consolidation of the date that the merger or consolidation has become effective ....") (emphasis added).

**25.** 8 *Del. C.* § 262(d)(2) (emphasis added).

**26.** *See Alabama By–Products Corp. v. Cede & Co.,* Del.Supr., 657 A.2d 254, 258 (1995) ("Under Section 262(b), a written demand for appraisal, executed by or for the shareholder of record, must be timely filed with the corporation in order to perfect appraisal rights."); *Tabbi v. Pollution Control Industries, Inc.,* Del.Ch., 508 A.2d 867, 869–71 (1986) (refus-

ing to excuse § 262(d)(1) demand that was not timely submitted), *implicitly overruled in part on other grounds,* In re Appraisal of Enstar Corp., Del.Supr., 535 A.2d 1351, 1357 n. 7 (1987); *Weinstein v. Dolco Packaging Corp.,* Del.Ch., C.A. No. 15000, mem. op., 1997 WL 118399, 1997 Del.Ch. Lexis 34, at *9–*11, Jacobs, V.C. (March 11, 1997) (discussing case law holding "that the procedural requirements of the appraisal statute must be strictly construed"); *In re Vision Hardware,* 1995 WL 214369, 1995 Del.Ch. Lexis 39, at *3–*5 (applying "requisite formality" to demand submitted pursuant to § 262(d)(2)). *See also* BALOTTI & FINKELSTEIN § 9.44[B], at 9–95 (demand deadlines are strictly construed); 15 FLETCHER § 7165.30, at 440–41 (where appraisal statutes "do not contain a phrase giving courts discretion to ignore the time requirements, the restrictions are strictly applied").

**27.** *Alabama By–Products,* 657 A.2d at 258 (quoting *Loeb v. Schenley Industries, Inc.,* Del. Ch., 285 A.2d 829, 830 (1971); *In re Appraisal of Enstar Corp.,* 535 A.2d at 1357). *See also In re Vision Hardware,* 1995 WL 214369, 1995 Del.Ch. Lexis 39, at *5 (referring to "the technical (and therefore more predictable) way in which the appraisal statute is construed"); *Weinstein,* 1997 WL 118399, 1997 Del.Ch. Lexis 34, at *11 ("strict adherence to formality is needed to enforce the statutory requirements for making an appraisal demand, because the purpose of the demand is to inform the corporation of which shareholders are dissenting from the merger and the total number of shares demanding appraisal") (citing *Alabama By–Products,* 657 A.2d at 262–63); *Raab,* 355 A.2d at 892 ("[a] demand for payment under § 262(b) ... requires the

ware courts have emphasized the importance of deadlines such as those set forth in § 262, because "when time is clearly of the essence under the terms of a statute,[28] a late filing will not be judicially condoned." [29]

In addition to the clear language of § 262(d)(2) and the strict construction § 262 is generally given by our courts, the absence of a specific exclusion in the statute is vitally important evidence of the

> formality and legal technicality befitting a last step in the final transaction between the corporation and its dissenting stockholder").

**28.** Given that § 262(d)(2) does not require the stockholder to deliver the demand on the twentieth day but only to send it, one could infer that time is not of the essence. Indeed, Mitchell Partners' faxed demand may well have arrived at Best before demands that were timely mailed. Nonetheless, our courts have strictly construed the deadlines set forth in § 262(d), and it is not an onerous requirement to expect a stockholder to send a demand within the statutory period. Regardless of the various slower and faster methods by which demands can be sent, strict compliance enables corporations to promptly learn the identity of all stockholders who have timely sought appraisal.

**29.** *Royal Industries, Inc. v. Monogram Industries, Inc.*, Del.Ch., 366 A.2d 839, 841 (1976) (*citing Loeb & Co. v. Hilton Hotels Corp.*, Del.Supr., 222 A.2d 789 (1966); *see also Schneyer v. Shenandoah Oil Corp.*, Del.Ch., 316 A.2d 570 (1974)), *rev'd on other grounds*, 372 A.2d 171 (1977).

There appears to be some first-blush tension in the case law between the strict construction given § 262's "statutory formalities," *Alabama By–Products*, 657 A.2d at 258, and language elsewhere stating that "[c]ourts have construed [the demand] requirement liberally for the protection of objecting stockholders." *Sapala v. Forest Health Service Corp.*, Del.Ch., C.A. No. 14260, mem. op., 1996 WL 255905, 1996 Del.Ch. Lexis 48, at *6, Jacobs, V.C. (1996).

But our courts have qualified the latter instruction, stating that "the statutory requirements are to be liberally construed for the protection of dissenting stockholders *within the limits of orderly corporate procedures and consistent with the purpose of the requirements.*" *Tabbi*, 508 A.2d at 869 (emphasis added) (citation omitted). Indeed, the Su-

General Assembly's intent not to exclude the final Sunday.[30]

As a matter of statutory interpretation, it is critical that the General Assembly has, throughout the Delaware Code, acted in a manner that runs directly counter to Mitchell Partners' argument that the General Assembly's silence reflects its conviction that the Sunday Rule automatically applies absent legislative language specifically abrogating it. Instead, the General

> preme Court long ago expressed doubt about the accuracy of "general expressions ... to the effect that merger statutes ... are enacted for the benefit of minority stockholders," as "[m]erger statutes are enacted, not in aid of dissenting shareholders alone, but are as well in aid of majority stockholders and also in aid of the public welfare if the notion is not entirely outmoded that healthy business corporations are in some degree conducive to the general good." *Salt Dome Oil Corp. v. Schenck*, Del.Supr., 41 A.2d 583, 587 (1945). In addition, the rule of liberal construction appears to apply primarily when there is a dispute as to whether a timely filing satisfied the technical requirements of a demand letter or objection. *E.g.*, *Tabbi*, 508 A.2d at 871, 869, 869–70 (finding, *inter alia*, that (1) letter adequately set forth a demand under § 262(d)(1); (2) the Supreme Court's decision in *Weinberger v. U.O.P., Inc.*, Del.Supr., 457 A.2d 701 (1983), did not require that " 'everything possible' must be done to allow stockholders to obtain an appraisal" and that "hypertechnical objections should be rejected out of hand and that the Court should look at the equities in deciding whether failure to comply with the requirements of § 262 deprives the stockholder of his appraisal rights"; and (3) untimely § 262(d)(1) demand could not be given effect); *Bell v. Kirby Lumber Corp.*, Del. Supr., 413 A.2d 137, 149 (1980) ("liberally construing sufficiency of demand requirement because the letter could, 'by fair implication, be read as being (a) written demand(s) for payment' ") (*quoting Carl Marks & Co. v. Universal City Studios, Inc.*, Del.Supr., 233 A.2d 63, 64 (1967)); *Sapala*, 1996 WL 255905, 1996 Del. Ch. Lexis 48, at *5–*9 (applying liberal construction rule to determine that letters constituted § 262(d)(2) appraisal demand); *Raab*, 355 A.2d at 891–93 (pre-vote objections can be liberally construed, but demand requirements must be strictly construed).

**30.** *See* Part III(B) (explaining that there was no clear common rule that applied the Sun-

Assembly has taken a statute-by-statute approach. Thus Delaware constitutional and statutory law in many other contexts states with considerable specificity when Sundays are to be excluded from the computation of statutory deadlines. Perhaps the most prominent example of such exactitude is Article III, § 18 of the Constitution of the State of Delaware.[31] And in numerous statutes addressing a wide variety of subjects, the General Assembly's prevailing practice has been to state unequivocally when it intended the term "day" to exclude Sundays.[32]

Although the General Assembly's inclusion of language excluding Sundays in such

statutes is by no means dispositive,[33] the fact that our legislature has so frequently gone out of its way to make clear when the term "day" excludes Sundays bears heavily on the legislative intent behind § 262(d)(2). Had the General Assembly believed that the Sunday Rule was firmly entrenched in the common law, it is doubtful that it would have taken such care to codify the rule in so many other statutory contexts. And had the General Assembly wished to make clear its universal approval of the Sunday Rule, it could have taken the approach of other states and adopted a Sunday Rule of general applicability.[34] But it has not.

Finally, Court of Chancery Rule 6(a) itself, analogous rules promulgated by the Delaware judiciary, and comparable statutorily enacted provisions are generally explicit when excluding Sundays from the calculation of limitations periods. *See* Supr. Ct. R. 11(a); Super. Ct. R. 6(a); Super. Ct. R.Crim. Pr. 45(a); Ct. Comm. Pleas R. 6(a); Ct. Comm. Pleas R. Civ. Pr. 6(a); Ct. Comm. Pleas R.Crim. Pr. 45(a); Fam. Ct. R. Civ. Pro. 6(a). *See also* 25 *Del. C.* § 5112 (property statute); 30 *Del. C.* § 551(d) (state taxes).

day Rule to statutorily required acts outside the judicial context).

**31.** Del. Const. Art. III, § 18 (unless certain conditions are satisfied, "[i]f any bill shall not be returned by the Governor within ten days, *Sundays excepted,* after it shall have been presented to him or her, the same shall be a law in like manner as if he or she had signed it ....") (emphasis added).

**32.** *See, e.g.,* 6 *Del. C.* § 2802(2) (defining "Business day" as *"any day except Sunday or a legal holiday")* (emphasis added); 6 *Del. C.* § 2822(3) (same); 6 *Del. C.* § 4202(1) (same); 6 *Del. C.* § 5141(c) (providing that fines payable by mail "must be received by the court within 10 days from the date the citation was issued *(excluding Saturday and Sunday)* ...") (emphasis added); 7 *Del. C.* § 131(c) (providing similarly); 7 *Del. C.* § 6061(c); (providing similarly); 7 *Del. C.* § 786(d) (permitting in certain places and under certain circumstances the trapping of raccoons "during any time of the year *excepting on Sundays")* (emphasis added); 9 *Del. C.* § 9105(a) ("County offices shall be open *each day except legal holidays. Saturdays and Sundays")* (emphasis added); 15 *Del. C.* § 7105 ("The department shall, on the next day after receiving a writ of election, *unless the same shall be Sunday and then on the Monday next following,"* post a proclamation reciting the writ, among other information, in certain places); *see also* 7 *Del. C.* § 4131; 9 *Del. C.* § 8605; 14 *Del. C.* § 8505(a)(3)(1); 15 *Del. C.* § 1901(a); 17 *Del. C.* § 1720; 19 *Del. C.* § 1103(b); 29 *Del. C.* § 9006B(a); 30 *Del. C.* § 5217. *But see* 7 *Del. C.* § 570 ("Dogs can be trained and field trials conducted, when properly licensed, upon restricted preserves on any date, *including Sundays,"* with certain exceptions) (emphasis added).

**33.** *See Delaware State University v. American Association of University Professors,* Del.Ch., C.A. No. 1389–K, mem. op. at 11, 2000 WL 713763, Strine, V.C. (2000) ("To infer that the General Assembly's silence in the case of PERA was an implicit act of exclusion solely because DSU was explicitly included in other statutes using the term 'state agency' is to misapply a hornbook methodology to the process of lawmaking in a citizens' legislature."); *see also Robb v. Ramey Associates, Inc.,* Del.Super., 14 A.2d 394, 396 (1940) (the *expressio unius est exclusio alterius* doctrine is a rule of construction that must be applied with great caution).

**34.** *See* 74 AM.JUR.2d *Time* § 19 ("In many states there are statutes providing specifically or in effect that if the last day on which an act is to be done falls on Sunday or a holiday, that day is to be excluded in the computation of time, and in some states a like provision is made with respect to Saturday. In most cases these enactments are considered as being intended to establish a uniform rule, applicable to the construction of statutes as well as to matters of practice, and they are applicable whether the time to be taken into account is days, months, or years.") (internal citations omitted).

Finally, the absence of any statutory prescription concerning the Sunday Rule – whether in § 262 itself or in the form of a general statute elsewhere in the Code – is particularly important in the context of § 262 because of the great attention that statute has been given by those involved in Delaware's corporate lawmaking process. Because "the appraisal remedy is 'entirely a creature of statute,'"[35] I find counterintuitive Mitchell Partners' suggestion that the General Assembly tacitly intended an uncodified Sunday Rule to apply to the formalized, *statutory* process of demanding appraisal.

B. *Delaware Courts Have Not Adopted, Whether Before Or After The Enactment Of 8 Del. C. § 262(d)(2), A Common Law Sunday Rule Applicable To The Performance Of Statutorily Mandated, Out–Of–Court Acts*

In an effort to counter the absence of any language in § 262(d)(2) referring to the exclusion of final Sundays and to diminish the importance of the General Assembly's general practice of explicitly incorporating the Sunday Rule where it believed that Rule was advisable, Mitchell Partners argues that Delaware common law has always recognized the Sunday Rule and that the General Assembly silently incorporated that supposed common law rule when it enacted § 262(d)(2).

To establish the existence of a common law Sunday Rule, Mitchell Partners points to the 1922 Superior Court case of *Simkin v. Cole.* The plaintiff further directs my attention to the 1948 Chancery Court case of *Lewis v. Corroon & Reynolds Corp.*,[36] not only as evidence of Delaware courts'

understanding that the Sunday Rule applies specifically to appraisal demands, but also as an example of the purportedly universal recognition in Delaware of the Sunday Rule.

 Notwithstanding Mitchell Partners' creative reading of the case law, Delaware common law does not appear to have ever explicitly recognized a general Sunday Rule applicable to statutorily prescribed time periods like the one set forth in § 262(d)(2). In so concluding, I note the "accepted principle of statutory construction that a legislature is presumed to know the common law before a statute is enacted"[37] and the fact that "Delaware is a common law state...."[38] I also accept the proposition that "[i]t is not to be presumed that a change in the common law was intended beyond that which is clearly indicated by express terms or by necessary implication from the legislative language used."[39] Nonetheless, *Simkin* and *Lewis* do not reflect the supposedly clear common law understanding Mitchell Partners suggests.

Mitchell Partners relies primarily on the passage in *Simkin* in which the Superior Court opined as follows:

> Where no contrary intent appears, the better and more reasonable rule, therefore, seems to be that where a given number of days is allowed to do an act, or it is said an act may be done within a given number of days, and whether it be by rule of court, judicial order or statute, Sundays are counted if one or more occur within the time, unless the last day falls on Sunday, in which case the act may be done on the next day.[40]

**35.** *Alabama By–Products Corp.*, 657 A.2d at 258 (*quoting Alabama By–Products v. Neal*, Del.Supr., 588 A.2d 255, 256 (1991); *Kaye v. Pantone Inc.*, Del.Ch., 395 A.2d 369, 375 (1978)); *see also Lichtman v. Recognition Equipment, Inc.*, Del.Ch., 295 A.2d 771, 772 (1972) ("The right to appraisal is purely statutory.").

**36.** *Lewis v. Corroon & Reynolds Corp.*, Del. Ch., 57 A.2d 632 (1948).

**37.** *Makin v. Mack.* Del.Ch., 336 A.2d 230, 234 (1975) (citation omitted).

**38.** *Id.* (citation omitted).

**39.** *Id.* (citation omitted).

**40.** *Simkin v. Cole*, 122 A. at 192.

■ But this pronouncement is pure dictum as to acts not performed in court. The issue before the court was whether the defendant had met the requirements for filing a motion for a new trial, not whether the defendant had complied with a statutorily prescribed process occurring out of court such as that for making appraisal demands.[41] Indeed, perhaps the *most* well-settled proposition of common law is that dictum does not constitute binding precedent.[42]

Furthermore, although later cases have cited the *Simkin* rule for various propositions of tolling law, those referring to *Simkin's* statement of the Sunday Rule are also distinguishable from the present case because they addressed deadlines for filing papers with the court.[43]

But the *Simkin* decision is helpful insofar as Judge Harrington attempted in that case to determine exactly where the common law then stood on the Sunday Rule issue. Judge Harrington concluded that whereas Delaware common law did apply the Sunday Rule to court deadlines, it did not clearly recognize the rule when stat-

utes were involved. As the *Simkin* court explained murky status of the law in 1922:

> There is considerable confusion in the authorities on this question in both England and America. Ency. Pl. & Pr., vol. 30, p. 1204; Amer. & Eng. Ency. of Law, vol. 28, p. 224. In both countries, *it has frequently been expressly held or intimated that where the last day for doing an act falls on Sunday, performance on the succeeding day, while good as to a rule of court, or a judicial order, is not ordinarily sufficient where a statute is involved.* Hughes v. Griffith, 106 E.C.L. 323; Morris v. Barrett, 97 E.C.L. 138 (7 C.B. & S.); Peacock v. Queen, 93 E.C.L. 262; Milbourn v. Lyster, 5 Sim. 565 (58 Eng. Repr. 451); 2 Stri. 87 (93 Eng. Rep. 401); American Tobacco Co. v. Strickling, 88 Md. 500, 41 Atl. 1083, 69 L.R.A. 909; Atkinson v. Merritt, 3 N.Y.Super. Ct. 667; Cooley v. Cook, 125 Mass. 406[, 1878 WL 5421]; Simmons v. Hanne, 50 Fla. 267, 39 South. 77, 7 Ann. Cas. 322; Anonymous, 2 Hill (N.Y.) 375, [1842 WL 5093] note.[44]

**41.** *See also Swiss Bank,* 141 F.3d at 693 (concluding that Delaware case law left much room to "doubt whether the dictum in *Simkin* is a reliable guide to Delaware law").

**42.** *See, e.g., Humm v. Aetna Casualty & Surety Co.,* Del.Supr., 656 A.2d 712, 716 (1995) ("This language is *obiter dicta* and is, therefore, not binding as legal precedent."); *Opinion of the Justices,* Del.Supr., 198 A.2d 687, 690 (1964) (same).

**43.** *E.g., Shepard v. Williams,* Del.Super., C.A. No. 82C–MR–34, 1986 WL 9914, 1986 Del.Super. Lexis 1326, O'Hara, J. (1986) (applying Superior Court Rule 6(a) to deny defendant automobile insurer's motion to dismiss action for failure to comply with the two-year statute of limitations set forth in 10 *Del. C.* § 8119); *Schneyer,* 316 A.2d at 572 (applying Court of Chancery Rule 6(a) to find that where the four-month deadline under § 262(c) expired on a Sunday, "the statutory period for filing a petition did not toll until the following day ..."); *Prudential Insurance Company of America v. Rozar,* Del.Ch., 162 A.2d 715, 716 (1960) (finding applicable the conclusions reached by *Associated Transport*

and *Simkin* and accepting plaintiff insurance company's argument that, even though last day of one-year contestability period under insurance policy fell either on a Saturday or Sunday, plaintiff was entitled to bring action because "the only way the plaintiff-company could initiate a contest of the policy was by instituting legal proceedings"); *Mogul v. Miller,* Del.Super., 162 A. 515 (1932) (where four-day Rule 35 deadline would have expired on a Sunday and Monday was May 30, or Memorial Day, and where defendant's attorneys claimed to have complied with the rule in filing their reasons on Tuesday, granting plaintiff's motion to dismiss or strike out defendant's reasons for a new trial because, per *Simkin v. Cole* and by Section 1430, Rev.Code 1915, defendant's reasons should have been filed on Monday, May 30, even though that day was Memorial Day). *Compare Williams v. Singleton,* Del.Supr., 160 A.2d 376, 378 (1960) (distinguishing *Associated Transport v. Pusey* on basis that *Associated Transport* that involved a three-year statute of limitations that expired on a Sunday).

**44.** *Simkin v. Cole,* 122 A. at 191 (emphasis added).

Turning to these and other case law authorities, the law appears to have been as Judge Harrington described it, that is, not particularly clear [45] but tending to favor the inclusion of final Sundays when computing statutory deadlines unless the statute in question specified that such Sundays should be excluded.[46] The older

45. *See, e.g., Barnes v. Eddy*, 12 R.I. 25, 1878 WL 4009, 1878 R.I. Lexis 8, at *26 (1878) (explaining that the cases on this issue have never been "entirely harmonious").

46. *E.g., Neiswander v. Brickner*, 116 Ohio St. 249, 156 N.E. 138, 140 (Oh.1927) (observing that, according to a contemporary treatise, that "the great weight of authority" supports the rule that "where an act is to be done within a time fixed by statute, and the last day thereof falls on a Sunday, performance of the act on the following Monday is not timely unless expressly authorized by statute") (*citing* 7 Ann. Cas. 325); *see also id. (citing McGinn v. State*, 46 Neb. 427, 65 N.W. 46 (1895); *Hixenbaugh v. Union Central Life Ins. Co.*, 219 Ill.App. 534 (Ill.Ct.App.1920), *Monroe Cattle Co. v. Becker*, 147 U.S. 47, 13 S.Ct. 217, 37 L.Ed. 72 (1893)); *Styles v. Dickey*, 22 N.D. 515, 134 N.W. 702, 703 (1912) ("In court practice both under rules of court and statutes regulating procedure where the last day for performance falls on Sunday, where the time within which the act is to be done is measured by days, generally performance can be made on the Monday following, but this rule does not apply to statutes construed as mandatory as to time provisions."); *Simmons v. Hanne*, 50 Fla. 267, 39 So. 77, 80 (1905) ("The great weight of authority is that, in computing the time within which an act required by any statute must be done, if the last day falls on a Sunday, it cannot be excluded, and the act done on the Monday following, unless there is some statute providing that the Sunday should be excluded from the computation, or the intention of the Legislature to exclude it is manifest."), *overruled in relevant part, Dade County Planning Dept. v. Ransing*, 158 So.2d 528 (1963); *American Tobacco Co. v. Strickling*, 88 Md. 500, 41 A. 1083, 1086–87 (Md.Ct.App., 1898) ("The general rule, subject to but few exceptions, is that statutory time of over 7 days cannot be extended because the last day falls on Sunday.") (*citing* 2 Enc. Pl. & Pr. 256; *Vailes v. Brown*, 16 Colo. 462, 27 P. 945 (1891); *Cooley v. Cook*, 125 Mass. 406 (Mass.1878); *Ex Parte Dodge*, 7 Cow. 147, 1827 WL 2812 (N.Y.1827); *Johnson v. Meyers*, 54 F. 417 (8ᵗʰ Cir. 1893)); *Cressey v. Parks*, 75 Me. 387, 1883 WL 3463 (Me.1883) (" 'Sunday,' remarks Byles, J., in *Peacock v.. The Queen*, 93 E.C.L. 264, 'at common law, is just like any other day.' Sunday, observes Lord Ellenborough, in *Crewell v. Green*, 14 East. 537, 'is as much a day to occupy space of time as any other day.' When the statute prescribes the number of days within which an act is to be done, and nothing is said about Sunday, it is to be included."). *See also Maresca v. United States*, 277 F. 727, 733–34 (2d Cir.1921) (" 'Where an act is required to be done in any certain number of days after or before a fixed time, Sunday is to be included in computing the number of days, when it exceeds seven; if it is less than seven, Sunday must be excluded[.]' ") (*citing* 38 Cyc. 332, 333; LEWIS, 1 SUTHERLAND ON STATUTORY CONSTRUCTION § 188, at 335 (2d Ed.)), *cert. denied*, 257 U.S. 657, 42 S.Ct. 183, 66 L.Ed. 420 (1922). *Compare Von de Place v. Weller*, 64 N.J.L. 155, 44 A. 874, 874 (N.J.Supr.1899) ("At common law, if an act be stipulated to be, or is required to be, done on Sunday, or on a legal holiday, the party has the next following day in which to perform it. 3 Chit. Gen Prac. p. 104. It seems, however, that where the act to be performed is one which is required by statute, in the orderly course of judicial procedure, the common law rule has not always been followed, either in England or in this country, as may be see by a reference to the cases on this subject collated in the footnotes to the article on the computation of time in 26 Am. & Eng. Ency. L. 10 *et seq.*"). *But see, e.g., Poetz v. Mix*, 7 N.J. 436, 81 A.2d 741, 745 (1951) ("Although there is diversity of opinion elsewhere, it is well settled in this state that where, by statute, an act is due arithmetically on a day which turns out to be a Sunday or legal holiday, it may be lawfully performed on the following day, and if that day be also a Dies non on which the public offices are closed to the transaction of business, according to the 'holiday acts,' *supra*, a similar rule applies.") (citations omitted); *Schnepel v. Mellen*, 3 Mont. 118, 126 (1878) ("The general rule for the computation of time in cases of this description undoubtedly is that where the last day in which the required act can be performed falls on Sunday, the act may be well done on the following day. Sunday is excluded from the count."); *id.* (" 'Without recurring to all the decisions on the subject of computation of time, it may be sufficient to say, that whenever by rule of court or an act of the legislature a given number of days are allowed to do an act, or is it said that an act may be done within a given number of days, the day in which the rule is taken or the decision made is excluded, and if one or more Sundays occur within the time, they are counted unless the last day falls on Sunday, in which case the

treatises I have consulted suggest similarly, although some state more definitively that the common law of the United States and England did not apply the Sunday Rule to statutes.[47]

Nor does the 1948 case of *Lewis v. Corroon & Reynolds Corp.* alter my decision. Mitchell Partners finds *Lewis* particularly important as reflecting not only Vice Chancellor Seitz's conclusion that the Sunday Rule applies to the statutory appraisal demands but also of the longstanding assumption on the part of many in the Delaware legal community that the rule generally applies to statutorily required acts.

Admittedly, the *Lewis* decision is initially exciting to researchers of the Sunday Rule in Delaware, in that Vice Chancellor Seitz appears in that decision to have applied the Sunday Rule when calculating the deadline for an appraisal demand. In *Lewis*, the Vice Chancellor stated as follows:

> Since the merger agreement was recorded November 18, 1946, *the last day for making a written demand for payment was twenty days after that date, to wit, on December 9, 1946 (December 8 being a Sunday).* It is not disputed that Mr. Rosenfeld's letter of demand on behalf of the nine stockholders was mailed and received before December 9, 1946. There was compliance, therefore, with the requirement of the appraisal statute as to when the written demand must be made.[48]

act may be done on the next day.' ") (*quoting Goswiler's Estate,* 3 Pen. & W. 200); *Sherwood Bros., Inc. v. District of Columbia,* 72 App.D.C. 155, 113 F.2d 162, 163 (1940) (common law-rule is to exclude Sunday) (*citing Lamson v. Andrews,* 40 App.D.C. 39 (1913); *Street v. United States,* 133 U.S. 299, 25 Ct.Cl. 515, 10 S.Ct. 309, 33 L.Ed. 631 (1890); *Monroe Cattle Co. v. Becker* 147 U.S. 47, 13 S.Ct. 217, 37 L.Ed. 72; *Pressed Steel Car Co. v. Eastern Ry.,* 121 F. 609 (1903)). *Compare Swiss Bank,* 141 F.3d at 693 ("[I]n the wake or under the influence of the statutory movement, a common law rule allowing such an excuse emerged") (*citing Pickens v. State Farm Mutual Automobile Ins. Co.,* 246 S.C. 380, 144 S.E.2d 68, 71 (1965); *Dean v. Freeze,* 213 Ark. 264, 209 S.W.2d 876, 878 (1948); *Breen v. Rhode Island Ins. Co.,* 352 Pa. 217, 42 A.2d 556, 558 (1945); *Glover v. Glover,* 416 S.W.2d 500, 503 (Tex.Civ.App.1967); *Prudential Carolinas Realty v. Cambridge Development Corp.,* 872 F.Supp. 256, 260 & n. 4 (D.S.C.1994) (applying South Carolina law), *aff'd mem.,* 42 F.3d 1386 (4th Cir.1994); *Simkin,* 122 A. at 192).

47. *See* E.T. CRAWFORD, THE CONSTRUCTION OF STATUTES § 113, at 167–68 (1940) (stating that as a matter of U.S. common law, "Sundays, in the absence of a statute excluding them from the period prescribed, are counted, even though the period ends on Sunday, except perhaps where the period is less than a week") (*citing, inter alia, Taylor v. Palmer,* 31 Cal. 240, 1866 WL 830; *Chicago v. Vulcan Iron Works,* 93 Ill. 222 (Ill.1879); *Haley v. Young,* 134 Mass. 364 (Mass.1883); *Harrison v. Sager,* 27 Mich. 476, 1873 WL 3058 (1873); *National Bank v. Williams,* 46 Mo. 17 (Mo.1870), *and for contrary position, Hunzicker v. Pulliam,* 168 Okla. 632, 37 P.2d 417 (1934)); G.G. SHARP & B. GALPIN, MAXWELL ON THE INTERPRETATION OF STATUTES, at 353 (10th ed.1953) (stating that under English law " '[d]aily' includes Sundays" and that " '[i]t has been held ... [that] where an Act which made no mention of Sunday required that a recognisance should be entered into in two days after a notice of appeal, and the notice was given on Friday, recognisances on that following Monday were too late, though Sunday was the last day, and they could not be entered into then' ") (*citing London C.C. v. S. Metropolitan Gas Co.,* 1 Ch. 76 (1904); *Ex parte Simpkin* (1859); L.R. 4 C.P. 235; *Ex parte Hicks,* 1875 L.R. 20 Eq. 143).

What little modern commentary exists is consistent with the above. *See* N.J. SINGER, 2 SUTHERLAND STATUTORY CONSTRUCTION § 33.12, at 27 (5th ed.1993) (stating merely that "[p]eriods of time of more than a week are generally construed to include Sundays in the absence of a statutory provision to the contrary"); N.J. Marini, Annotation, *Inclusion or Exclusion of First and Last Day for Purposes of Statute of Limitations,* 20 A.L.R.2d 1249 § 6 (observing that "[t]here appears to be a divergence of authority on the question of whether the last day of a period of limitation should be extended to the following day where such last day falls upon either a Sunday or a holiday").

48. *Lewis,* 57 A.2d at 635–36 (emphasis added).

Thus Vice Chancellor Seitz appears to have taken it as a given that the deadline for an appraisal demand would be extended to the following Monday when the twentieth day of the limitations period fell on a Sunday.

But *Lewis* exerts little, if any, controlling force over the proper construction of § 262(d)(2). As was true of the commentary in the *Simkin* decision, Vice Chancellor Seitz's calculation of the § 262(d)(2) deadline in *Lewis* is also dictum, because the demand in that case was made on December 3, five days before the Sunday mentioned. Thus, as in *Simkin,* the issue of the Sunday Rule was not before the court in *Lewis,* and nothing in that decision suggests that Vice Chancellor Seitz answered the question after considering thoughtful briefing on both sides of the issue. Thus *Lewis* cannot function as binding precedent on the Sunday Rule issue.

Mitchell Partners argues that, at the very least, *Lewis* reflects the common understanding that the Sunday Rule applies to the calculation of statutory limitations periods such as that in § 262(d)(2). Yet this assertion is undermined by several factors.

First and most critical, the General Assembly's behavior is far more consistent with an understanding on its part that the common law did not apply the Sunday Rule to statutes, absent a specific decision by the legislature to codify that approach. And, as I have pointed out, this understanding comports with what seems to have been the somewhat more prevalent view at common law, as acknowledged in *Simkin.*

Second, then-Vice Chancellor and now Justice Walsh's decision in *Wilgus v. Salt Pond Investment Co.*[49] further undercuts the notion that the Sunday Rule was an accepted part of the common law. As Justice Walsh observed when remarking on the absence in Delaware of a Sunday Rule statute of general applicability, the Sunday Rule "is a creature of statute not common law."[50]

Furthermore, when reviewing Delaware case law to determine whether our common law applies the Sunday Rule to contract provisions, Judge Posner wrote on behalf of the United States Court of Appeals for the Seventh Circuit in *Swiss Bank Corp. v. Dresser Industries, Inc.*[51] that he was unable to find a "case in which a Delaware court has construed a statute of the state to excuse ... nonperformance [on a Sunday] by implication."[52] And although Judge Posner found evidence that a common law Sunday Rule had emerged in other jurisdictions, he could not locate any Delaware decisions adopting that rule.[53]

Finally, any claim that *Lewis* is a statement of bedrock common law on this issue is contradicted by Mitchell Partners' own actions in this case. Not only did the plaintiff fail to think of the Sunday Rule when it submitted its Shareholder Information Form concerning the Disputed Shares, the plaintiff also failed to cite *Lewis* until oral argument.[54] In this regard, Mitchell Partners' conduct echoes the failure of respected treatises on the Delaware General Corporation Law to appreciate the Sunday Rule's applicability to § 262; none of these authorities cite *Lewis* for that proposition.[55]

**49.** *Wilgus,* 498 A.2d 151.

**50.** *Id.,* 498 A.2d at 157 n. 2 (citations omitted) (emphasis added). *See also In re Appraisal of Enstar,* Del.Supr., 604 A.2d 404, 413 (1992); note 35, *supra.*

**51.** *Swiss Bank,* 141 F.3d at 693.

**52.** *Id.*

**53.** *Id.* ("[I]n the wake or under the influence of the statutory movement, a common law rule allowing such an excuse emerged") (citations omitted).

**54.** *See* note 77, *infra.*

**55.** *See* note 3, *supra.*

Thus I conclude that Delaware common law does not appear to have ever recognized a Sunday Rule applicable to statutorily prescribed time periods like the one set forth in § 262(d)(2). At the very least, I find the law to have been so unclear as to preclude any conclusion that the General Assembly understood it as recognizing the Sunday Rule and therefore intended § 262(d)(2) to silently incorporate that tolling method.

### C. The Sunday Rule Embodied In Court Of Chancery Rule 6(a) Does Not Supersede The Plain Language Of § 262(d)(2) Or Otherwise Function As A Legislatively Enacted Sunday Rule

■ Irrespective of the statutory and case law considerations outlined above, Mitchell Partners contends that I must read § 262(d)(2) as modified by the provisions of Court of Chancery Rule 6(a), which, like its counterparts in the rules of other Delaware courts,[56] incorporates the Sunday Rule for the purposes of this court's procedures. In other words, the plaintiff argues that because Rule 6(a) requires the application of the Sunday Rule to the computation of "any period of time prescribed or allowed by these rules, by order of Court, or *by any applicable statute*,"[57] Rule 6(a) therefore functions as a legislatively enacted Sunday Rule governing the tolling of the § 262(d)(2) deadline.

Yet apart from the fact that Mitchell Partners has not cited any Delaware case construing the term "applicable statute" in the manner the plaintiff advocates,[58] several additional factors militate against the conclusion that Rule 6(a) provides a default rule for calculating the § 262(d)(2) limitations period.

First, Mitchell Partners' construction conflicts with the clear provisions of Court of Chancery Rule 1 and the Rules' enabling legislation, both of which sharply circumscribe the scope of this court's rule-making authority. This court's ability to make rules is quite limited and is manifestly designed to respect the court's need to govern the processes by which it conducts its business as a unit of Delaware's independent, judicial branch of government. Thus 10 *Del. C.* § 361(a) authorizes the Chancellor only to make rules governing *"practice and procedure with respect to ... causes and proceedings in [the Chancery] Court."*[59] In conformity with the modest authority vested in this court to make its own rules, Rule 1 – which is entitled "Scope and purpose of Rules" – expressly states that "[t]hese Rules shall govern *the procedure in the Court of Chancery* of the State of Delaware...."[60]

---

**56.** *E.g.*, Supr. Ct. R. 11(a); Super. Ct. R. 6(a); Super. Ct. R.Crim. Pr. 45(a); Ct. Comm. Pleas R. 6(a); Ct. Comm. Pleas R. Civ., Pr. 6(a); Ct. Comm. Pleas R.Crim. Pr. 45(a); Fam. Ct. R. Civ. Pro. 6(a).

**57.** Ct. Ch. R. 6(a) (emphasis added). Rule 6(a), entitled "Computation," provides in full:

In computing any period of time prescribed or allowed by these rules, by order of Court, or by any applicable statute, the day of the act, event or default after which the designated period of time begins to run is not to be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or other legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the Register inaccessible, in which event the period runs until the end of the next day

which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and other legal holidays shall be excluded in the computation. As used in this rule, "legal holidays" shall be those days provided by statute or appointed by the Governor of the State.

**58.** I am aware of this court's footnote dictum in *Wilgus* stating that "by Court Rule, acts required to be done by statute or Court Rule" are extended by the Sunday Rule. *Wilgus*, 498 A.2d at 157 n. 2. I read this sentence as merely describing Rule 6(a) rather than holding as to the proper scope of the term "applicable statute."

**59.** 10 *Del. C.* § 361(a) (emphasis added).

**60.** Ct. Ch. R. 1 (emphasis added).

Thus Rule 6(a) is clearly inapplicable to § 262(d)(2) by the very terms of the Rules and their enabling legislation, which explicitly provide that the Rules apply only to litigation taking place within this court. Because shareholders submit § 262(d)(2) demands directly to companies, the demand process can hardly be deemed a "procedure in the Court of Chancery" under Rule 1.[61] Thus demands submitted pursuant to § 262(d)(2) are not properly covered by Rule 1 or subject to Rule 6(a).[62]

It is similarly evident that § 262(d)(2) is not an "applicable statute" within the meaning of Rule 6(a). Rather, that term must be read in the context of § 361(a) and Court of Chancery Rule 1. When so construed, "applicable statute" is best read as referring instead to statutory provisions addressing periods of time (e.g., a statute of limitations) involving events that occur within this court, such as the filing of a complaint.

This more limited reading of Rule 6(a) finds support in the case of *Williams v. Singleton.*[63] *Singleton* held that no overlap exists between Superior Court Rule 6(a) – a rule analogous to Court of Chancery Rule 6(a) – and 10 *Del. C.* § 9578 such that Superior Court Rule 6(a) could be held to modify that statute. In *Singleton,* the Court considered the defendant's appeal of the Superior Court's dismissal of his case because he had filed his appeal with the Superior Court too late under the terms of § 9578(a). That provision stated that "[a]n appeal shall be allowed by the Justice at any time within 15 days *from the day for giving the judgment and not after, counting that day as one,* upon the party entitled to the appeal or his agent or attorney praying it."[64] In direct contrast, the first sentence of Superior Court Rule 6(a) stated that "[i]n computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, *the day of the act, event, or default after which the designated period of time begins to run is not to be included.*"[65]

The *Singleton* Court resolved the conflict by rejecting the contention that Rule 6(a)'s first sentence operated to enlarge the filing period – i.e., that § 9578(a) could be held an "applicable statute" within the meaning of Rule 6(a) – because so holding would effectively "amend a jurisdictional statute by applying the rule."[66] The Court reasoned that whereas "the Superior Court Rules govern practice and proce-

61. *See also Swiss Bank,* 141 F.3d at 693 (observing that the "old common law rule that Sunday is *'dies non juridicus,'* " means "only that judicial acts performed on Sunday are void" and thus "has nothing to do with the validity of contracts or the deadlines for performing them, unless the performance required by the contract is the commencement of legal proceedings on a day on which the relevant court is not open") (citations omitted).

62. Indeed, the crucial difference between the court's lack of involvement in the process of making appraisal demands and its direct role in the process of filing appraisal petitions under § 262(f) dispenses with Mitchell Partners' argument that the use of "day" in the latter provision somehow undermines the view that the General Assembly was consistent in its use of the term "day" in § 262. *See* 8 *Del. C.* § 262(f) ("Upon the filing of any such petition by a stockholder, service of a copy thereof shall be made upon the surviving or resulting corporation, which shall *within*

*20 days* after such service file in the office of the Register in Chancery in which the petition was filed a duly verified list …"). Whereas § 262(f) *is* properly read by reference to Court of Chancery Rule 6(a) for the purposes of calculating the limitations period set forth in that section because the filing and adjudication of petitions takes place in court, this court's rule-making authority does not extend to appraisal demands made by and upon private parties in private places of business. Put differently, Rule 6(a) properly and *constitutionally* modifies § 262(f), per 10 *Del. C.* § 361(c) and (d), with respect to when a petition may be filed in this court.

63. *Williams v. Singleton,* 160 A.2d 376.

64. *Id.,* 160 A.2d at 377 (*quoting* 10 *Del. C.* § 9578) (emphasis added).

65. *Id.,* 160 A.2d at 377 (*quoting* Super. Ct. R. 6(a)) (emphasis added).

66. *Id.,* 160 A.2d at 378.

dure 'with respect to the commencement of trial, hearing and determination of actions in the *Superior Court*'" and "supersede any conflicting statute" with respect to "such matters[,]"[67] the Rules were "not intended to supersede statutes of the kind here involved, nor could they do so."[68] Instead, the court found, § 9578(a) is a "jurisdictional statute," and the Superior Court "was without jurisdiction to entertain [the appeal] and Rule 6(a) ha[d] no bearing upon the matter."[69]

It is significant that the *Singleton* Court reached this conclusion in the context of a deadline for an appeal, which obviously involves a filing with the court. Notwithstanding the presumption that court rules appropriately modify general statutes of limitations that are not as explicit as § 9578(a), the *Singleton* court concluded that the court could not apply its own rules of procedure to alter the terms of an unambiguous jurisdictional statute such as § 9578(a). This jurisdictional consideration has even more force in the context of § 262(d)(2), where the shareholder at issue has failed to submit a timely appraisal demand and thereby perfect his appraisal rights, where such perfection is a necessary prerequisite to this court's assumption of jurisdiction. Given that the demand submission process precedes Chancery Court jurisdiction and takes place between the parties and without contemporaneous court involvement, the *Singleton* decision strongly suggests that

there is no legitimate basis for this court to use Court of Chancery Rule 6(a) in assessing whether it is appropriate to exercise jurisdiction over Mitchell Partners' appraisal demand, i.e., whether the demand was timely submitted.[70]

As a last ditch effort, Mitchell Partners, points to the Superior Court's statement in *Associated Transport, Inc. v. Pusey* that Superior Court Rule 6(a) "has had the force and effect of legislative enactment since 1948" and that when a statute of limitation does not indicate the inapplicability of the policy of Rule 6(a), then the Rule must be said to apply.[71] But *Associated Transport* and the cases on which it relied are inapposite here precisely for the reason that they involved court filings and statutes of limitation implicating the *dies non juridicus* doctrine rather than a statutorily required, out-of-court act in which the court has no role.

Correspondingly, I reject Mitchell Partners' suggestion that 10 *Del. C.* § 361(c) and (d) – which provide, respectively, that the Court of Chancery Rules "supersede all statutory provisions in conflict or inconsistent therewith" and that "[a]ny inconsistency or conflict between any rule" and any statute "shall be resolved in favor of such rule of court" – bear on the applicability of Rule 6(a) to § 262(d)(2). Because this court's rules do not apply to the appraisal demand process in the first place, there is no conflict for § 361(c) and (d) to

---

**67.** *Id. (quoting* 10 *Del. C.* § 561(a)) (emphasis in original).

**68.** *Id.,* 160 A.2d at 378.

**69.** *Id. Compare Shepard v. Williams,* 1986 WL 9914, 1986 Del.Super. Lexis 1326 (holding plaintiff's complaint filed on a Monday to be timely under Superior Court Rule 6(a) where two-year statute of limitations set forth in 10 *Del. C.* § 8119 expired on a Sunday).

**70.** Admittedly, *Singleton* contains a perplexing sentence distinguishing *Associated Transport* on the basis that *Associated Transport* involved a three-year statute of limitations that expired on a Sunday. *Singleton,* 160 A.2d at 378 (*citing Associated Transport,* 118 A.2d 362). The *Singleton* Court merely re-

ferred to *Associated Transport* and stated that "[o]bviously, that decision does not touch the question before us." *Id.* Yet this sentence can be read as simply distinguishing the case before it from a situation in which the General Assembly may be presumed – by virtue of the enabling powers it gave the courts over events occurring in the litigation context and by operation of the well-recognized common law Sunday Rule for court filings – to have intended Rule 6(a) to hold sway over a typical statute of limitations that does not have explicit language such as that found in 10 *Del. C.* § 9578.

**71.** *Associated Transport,* 118 A.2d at 365.

resolve. These provisions instead appear to apply to situations where the General Assembly has stumbled beyond its jurisdictional boundaries by legislating on matters pertaining solely to judicial procedure.

Finally, the greatest obstacle to Mitchell Partners' proposed conflation of § 262(d)(2) and Rule 6(a) is that it disrespects the separation of powers doctrine recognized under Delaware law.[72] That is, Mitchell Partners' view of Court of Chancery Rule 6(a)'s scope would theoretically permit this court to override *by court rule* any statutory provision duly enacted by our General Assembly. Not only would this run directly counter to the mandate in § 361(b) that the Court of Chancery Rules "shall not abridge, enlarge or modify any substantive right of any party," it would offend the separation of powers established by the Delaware Constitution, which does not contemplate the kind of rulemaking power that Mitchell Partners would confer on the judiciary.[73] The judiciary should not repay the General Assembly's legislative recognition of the judicial branch's need to shape its own procedures by using that recognition as a pretext for encroaching on the General Assembly's constitutional authority.

**72.** *In re Request of the Governor for an Advisory Opinion,* Del.Supr., 722 A.2d 307, 318 (1998) ("Separation of powers 'exists in this State as a fundamental [principle of] our Constitutional law' ") (*quoting Opinion of the Justices,* Del.Supr., 380 A.2d 109, 113 (1977)).

**73.** *Id.* ("The Delaware Constitution of 1897 provides for exclusive action of each branch within its own sphere. Laws are to be enacted by the legislative branch (Article II), enforced by the executive branch (Article III), and construed by the judicial branch (Article IV).").

In this regard, it is worth noting that if Rule 6(a) applies, § 262(d)(2) therefore incorporates not only the Sunday Rule, but a "Saturday Rule" and a "Holiday Rule," which taken together might extend the demand period by as much as three days.

**74.** *Swiss Bank,* 141 F.3d at 693.

### D. *Counting Sundays Will Not Produce Any Real–World Inequities*

Although this case was not argued on equitable grounds, it seems appropriate to acknowledge that the lack of a Sunday Rule makes the demand process slightly more onerous for stockholders.

Nonetheless, our society has, for good or ill, long since decided to let commerce flourish at all times. As Judge Posner commented in the 1998 *Swiss Bank* case, "the excusing rule, whether common law or statute-based, is an anachronism, given the amount of commercial activity on Sundays; and it is therefore rejected in most of the recent decisions, unless, of course, it is embodied in a statute."[74] In my view, Judge Posner's observation applies with even greater force to statutorily prescribed actions that may be performed on any day of the week, such as faxing a demand (which can be done on any day as long as the receiving corporation has not turned its fax machine off), submitting a demand via any number of courier services (which also can be done on any day of the week, albeit at some added expense), or even mailing a demand through the regular mail (which can be done in larger cities such as Philadelphia, for example, twenty-four hours a day, seven days a week, with a postmark available even on Sundays).[75]

**75.** Even though this ruling does not address § 262(d)(1) demands, I perceive no discernibly greater problems in that context. In § 262(d)(1) situations, the stockholder already must take great care to guarantee timely delivery. There are now multiple, reliable methods of delivery by which a stockholder can ensure timely Sunday delivery nearly as easily as on any other day, although the stockholder may have to pay some extra costs. And it seems rather paradoxical and strained to base a case for laxity on the grounds that an investor (i.e., a capitalist) who delays compliance with the statute may have to pay a market-based premium to take last-minute action. Moreover, as Judge Posner pointed out in *Swiss Bank,* if a party's ability to perform on a Sunday is thwarted by the party arguing that performance was due that day (e.g., if a corporation's fax machine was out of paper and therefore would not receive a shareholder's faxed demand), the non-performance should be excused. *Swiss Bank,* 141 F.3d at

That being said, the General Assembly remains free to apply the Sunday Rule to § 262(d)(2) and thereby temper society's mad rush into a "24–7" commercial world. But until the General Assembly does so, stockholders like Mitchell Partners cannot be excused for failing to meet the deadline for submitting demands according to the time frame currently set forth in § 262(d)(2).[76]

### IV. *Conclusion*

For the reasons stated herein, Mitchell Partners' motion for summary judgment is DENIED, and Best's motion for summary judgment is GRANTED. The parties shall confer and submit a conforming order within seven days of the date of this opinion.[77]

691–92. That is, a corporation pressing its right to receive a demand in accordance with a strictly applied Sunday deadline must be prepared to accept delivery on that day.

**76.** In another case, it bears mentioning, the Delaware Supreme Court similarly rejected a plaintiff shareholder's attempt to force a corporation to pay the consequences of a broker or nominee's failure to correctly perfect a shareholder rights. *See In re Appraisal of Enstar Corp.*, 535 A.2d at 1354–55 ("The legal and practical effects of having one's stock registered in street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker.... Enstar cannot, and should not, be blamed for the failure of a nominee or broker to correctly perfect appraisal rights for a beneficial owner.... The dispute, if any, is between these brokers and their clients.").

**77.** I note the following with respect to the two other issues raised by the parties.

First, another ground for denying Mitchell Partners' motion for summary judgment and for granting that relief to Best is Mitchell Partners' lack of timeliness in asserting its claim concerning the proper construction of the § 262(d)(2) limitations period.

Mitchell Partners acknowledges that this court's order of January 14, 1999 required record holders seeking appraisal to file Stockholder Information Forms (SIFs) on or before March 1, 1998 and that "[a]ny Record Stockholder desiring to respond to an objection or objections made by a Respondent shall attach to the SIF a written statement setting forth such person's position and all documents upon which such person relies to refute the Respondent's objection(s)." *Nelson v. Best*, Del.Ch., C.A. No. 16329, order ¶ 3, Strine, V.C. (Jan. 14, 1999). The January 14, 1999 order further stated that "[a]ny person who fails to file an SIF postmarked on or before March 1, 1999 shall be foreclosed from as-

serting a claim for appraisal of shares of Respondents, unless the Court otherwise determines for good cause shown." *Id.* at ¶ 4.

But the February 18, 1999 SIF for the Disputed Shares named Cede as the holder of record and thus did not refer to Mitchell Partners' March 23, 1998 demand. Indeed, the SIF contained an erroneous statement by Mitchell that he "did not receive the information [that the shares had been transferred by Bear Stearns] sufficiently in advance of the effective date of the Merger to submit a demand in Mitchell Partners' name." Best Br. Ex. L, at App. A. At oral argument, however, counsel for Mitchell Partners likewise conceded having failed to realize before the SIFs were submitted that § 262(d)(2) lent itself to the now-proffered reading. This failure is rather surprising, in light of the purportedly widespread understanding among Delaware practitioners that the Sunday Rule applies to statutory deadlines.

Yet Mitchell Partners has offered no excuse or justification for failing to miss this court-mandated deadline. Instead the firm merely argues that litigation is an organic process in which the court may exercise its discretion at any time to consider valid legal arguments affecting the outcome of the dispute. According to the plaintiff, Best has not been prejudiced by the plaintiff's pursuit of its Sunday Rule theory. Best had sufficient notice of Mitchell Partners' intention to press its right to appraisal, Mitchell Partners claims, because even though Mitchell acknowledged in the February 18, 1999 SIF that he was unable "to submit a demand in Mitchell Partners' name," he also asserted in the SIF his belief "that all of the [Disputed Shares] qualify for appraisal...." Best Br. Ex. L, at App. A.

I conclude, however, that Mitchell Partners has failed to show good cause for failing to assert its Sunday Rule contention in a timely manner. *See In re Appraisal of Enstar Corp.*, Del.Ch., 513 A.2d 206, 210 (1986) (where then-Vice Chancellor Hartnett stated that an

SIF is "analogous to a Chancery Rule 12 defense and, to a lesser extent, an admission pursuant to Chancery Rule 36" because an SIF is "designed to foreclose preliminary objections that the procedural prerequisites of the appraisal statute had not been complied with or that the entity seeking an appraisal was not the owner of the shares" and that, like a Rule 12 defense, an SIF can be amended "only for cause"); *Dolan v. Williams,* Del. Supr., 707 A.2d 34, 36 (1998) (describing "good cause" as "excusable neglect," requiring a demonstration of "some reasonable basis for noncompliance" or "neglect which might have been the act of a reasonably prudent person under the circumstances") (internal citation and quotations omitted). Absent such a showing, the deadlines established by this court's January 14, 1999 order must be respected if it is to effectuate 8 *Del.C.* § 262. Thus Mitchell Partners' post-hoc Sunday Rule theory fails for lack of timeliness as well as on the merits.

Second, because I find that Mitchell Partners' demand was not timely submitted, I do not reach Best's alternative argument challenging the sufficiency of the demand. *See* 262(d)(2) (a demand is "sufficient if it reasonably informs the corporation of the identity of the stockholder and that the stockholder intends thereby to demand the appraisal of such holder's shares").